CALIFORNIA INS. CO. v. BISHOP et al.
(No. 9390.)

(Court of Civil Appeals of Texas. Fort Worth. Nov. 13, 1920. Rehearing Denied Dec. 18, 1920.)†

Insurance ☞389(8)—Condition of fire policy held waived by issuing renewal policy with knowledge of facts.

In view of Vernon's Sayles' Ann. Civ. St. 1914, art. 4961, as to who are insurance agents, condition of fire policy on the stock of an automobile dealer that he should report to the company each car owned by him and its location as soon as known, and have an entry thereof made in passbooks provided therefor, was waived, the policy being, in effect, in renewal of a like policy for the previous year, and the agent having agreed with insured at the time of issuing the prior policy that he would from time to time visit insured's place of business and check up cars on hand and make the necessary reports and entries, and a report having been made during the life of the first policy of all the cars which were burned during the life of the second policy, and the agent having attempted to make an entry thereof, in the passbook; and this though by mistake he failed to make entry therein of some of them, and though the policy provided that no agent could waive any provision thereof unless the waiver was written thereon.

Appeal from District Court, Taylor County; J. W. Moffett, Special Judge.

Action by George C. Bishop and another against the California Insurance Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Bryan, Stone & Wade, of Fort Worth, and Ben L. Cox, of Abilene, for appellant.

Davidson & Hickman, of Abilene, for appellees.

CONNER, C. J. G. C. Bishop and Roy C. Barton, composing the partnership of Bishop-Barton Company, instituted this suit against the California Insurance Company upon a fire insurance policy issued to them by the defendant on February 8, 1919. The plaintiffs were dealers in new and secondhand automobiles in the city of Abilene, and had on hand in their place of business from time to time various automobiles. The policy did not describe any particular automobile, but simply referred to them as automobiles of various types, serial number, horse power, and price.

The policy, among other things, contained the following clauses:

"(6) The object and intent of this policy is to cover, subject to conditions herein contained, every automobile owned and for sale by the assured; therefore all such risks with their storage locations shall be reported to this company as soon as known to the assured, and a corresponding entry made in a passbook provided for this purpose, or a certificate issued hereunder, and such passbook or each certificate issued hereunder is hereby made a part of this policy. This policy shall cover, under the terms and conditions contained herein, every automobile owned and for sale by the assured, who by the acceptance of this policy expressly covenants and agrees to report to the company each automobile so owned and for sale by him and its storage location in the manner provided herein, and to pay the premium due hereunder with respect to same. Failure to so report any such risk shall render this insurance void as to such automobile or automobiles not reported. It is further agreed that the company through its duly authorized agent and at all reasonable times shall have access to the assured's books and records for the purpose of determining the automobiles which should be insured hereunder, their storage locations, and premiums which should be paid with respect thereto, and that any evasion or attempted evasion by the assured in the matter of reports of automobiles, their storage location, or payment of premiums hereunder, shall void this policy, and all insurance hereunder, and shall be an absolute defense to any suit or action brought under this policy."

"Upon acceptance of this policy, the assured agrees that its terms embody all agreements then existing between himself and the company, or any of its agents, relating to the insurance described herein, and no officer, agent, or other representative of this company shall have power to waive any of the terms of this policy, unless such waiver be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy extend to or be claimed by assured unless so written or attached."

The suit was defended upon the ground, substantially, that the plaintiffs had failed to comply with section 6 above by reporting and making entries or certificates of the automobiles owned and for sale by them that had been destroyed by the fire alleged. To which the plaintiffs replied by alleging, in substance, that the policy declared upon was but a renewal of a previous one issued to the plaintiff by the company on February 8, 1918, and that at the time of the issuance of the 1918 policy Phillip Kaufman, the local agent of the defendant company, orally agreed with Mr. Bishop, a member of the plaintiff firm, that he (Kaufman) would go to plaintiffs' place of business from time to time, check plaintiffs' books and cars on hand, and make the necessary reports and certificates covering such cars as were insured, and cancel the insurance of such cars as plaintiffs had sold or otherwise disposed of; that the said Phillip Kaufman during the continuance of the policy issued on February 8, 1918, did in fact come to plaintiffs' place of business, secure lists of the cars on hand covered by the policy, and make entries on the passbook or certificates as provided for in the section of the policy referred to. It was further alleged that on or about November 1, 1918, the plaintiffs furnished the defendant and

---

its agent with a correct written report of the cars then on hand; that said report contained all of the cars destroyed in the fire; that thereafter, on or about January 10, 1919, the defendant by its agents made entries on the passbook referred to in the policy or certificates covering six of the cars later burned, but by mistake omitted six of the cars later burned which had been reported. It was further alleged that at the time of the issuance of the policy of date February 8, 1919, all cars then on hand and later burned had theretofore been reported to the defendant, and that the defendant and its agents had actually seen them and knew that they were on hand at the time of the issuance of said policy, by reason of all of which, it was averred, the defendant had waived the requirements of said paragraph 6 of the policy relied upon in defense.

The defendant demurred to these allegations and denied their truth and invoked the terms of the second paragraph of the policy above quoted, and alleged that no officer or agent or representative of the company had ever waived the requirements of paragraph 6 by any writing upon or attachment to the policy.

The cause was submitted to a jury, which returned a verdict in favor of the plaintiffs for $4,075, upon which verdict a judgment was entered for the sum named with interest thereon from the date of the judgment at the rate of 6 per cent. per annum.

In due course the defendant filed its motion for a new trial, which was overruled by the court, due exception thereto taken, and this appeal prosecuted.

No issue in the evidence seems to have been presented as to the fact of the fire and the consequent loss of the automobiles described in plaintiffs' petition. Nor is there any dispute in the evidence that Phillip Kaufman was the local agent of the defendant company, who issued both the policies of February 8, 1918, and February 8, 1919, and that to him had been reported about November 1, 1918, the automobiles destroyed by the fire; that on January 10, 1919, thereafter Phillip Kaufman prepared certificates upon the prescribed forms upon six of the cars destroyed by fire, but omitted six other of the cars so reported and so destroyed. And it is undisputed in the evidence that no automobiles were reported by the plaintiffs at the time of the issuance of the policy of February 8, 1919, nor were entries of any kind then made upon the passbook or in the form of certificates, as provided for in clause 6 of the policy, nor any entry made upon the policy waiving these conditions. There was evidence, however, tending to support the plaintiffs' allegations to the effect that Phillip Kaufman, the agent of the defendant at the time of the issuance of the policy of February 8, 1918, then agreed with the plaintiffs, as an inducement to the taking out of a policy

in their company, to himself make the proper entries of automobiles to be covered by the policy upon the passbook or certificates, and that this course had been pursued by the local agent of the company during the continuance of the 1918 policy. And from the evidence and findings of the jury it must be inferred also that the policy of February 8, 1919, was in effect but a renewal of the policy of February 8, 1918, and that at the time of the issuance of the 1919 policy the agents of the company then knew or thought they knew the automobiles owned and held by the plaintiffs which it was intended to insure by the renewal policy. Any other fact or facts that may be necessary to an understanding of our conclusion will be stated later.

The vital issue presented below by objections to the evidence, to the court's charge, and to the court's rulings upon charges requested, and by assignments of error here, is one of waiver. In other words, the vital question presented for our determination is whether appellant's agent could and did waive the requirements of paragraph 6 of the policy hereinbefore quoted. We feel that we must determine this question adversely to appellant. The appellant is, and was at the times of the issuance of the policies mentioned, a California corporation, doing business in Texas, and evidently requiring the employment of agents in this state. Phillip Kaufman without dispute was appellant's agent in the city of Abilene, and as such issued both policies, and the fact that the required premiums were paid by the plaintiffs below is not questioned, nor is any other fact of nonliability asserted save the failure of the plaintiffs to comply with paragraph 6 of the policy by making the entries upon the passbook or certificates as therein expressed. As already stated, we think the evidence undoubtedly tends to show that Phillip Kaufman at the time of the issuance of the 1918 policy made the agreement to himself make the proper entries upon the passbook or certificates as an inducement to the plaintiffs to insure their automobiles in his company. To illustrate, Mr. Bishop, one of the plaintiffs, testified in regard to what occurred at the time of the taking out of the 1918 policy:

"I had a conversation with Mr. Kaufman relative to the manner in which the declarations on these cars were to be made. Mr. Kaufman came into the office one day and told me we had a certain different form of policy, and he came in and said that he had a policy that would suit us better than anything we had ever had, and then he outlined it to me, and when he did I raised the objection that the making of those proofs each time, or rather those certificates, was rather a tedious affair and one that was liable to be overlooked, and he stated that he did not think so, that it was very little trouble, and that it would entail but very little work, and went on to say that, so far as he was concerned, he would come around to our place ev-

ery once and a while and check up what we had on hand, and what we had sold, and attend to that part of it for us; and I said, 'Well, if it won't be too much trouble and you will do that, we will take the policy.' So with that understanding the policy was written up, accepted, and put in force."

In the case of Wagner & Chabot v. Westchester Fire Insurance Co., reported in 92 Tex. 549, 50 S. W. 569, it appears that Wagner and Chabot were agents of Kloak Bros. & Co., of Cincinnati, Ohio, and as such desired to insure certain goods owned by Kloak Bros. & Co. A policy was issued by the insurance company made payable to Wagner & Chabot. The policy described the property insured as owned by Wagner & Chabot, omitting any reference to the interest of ownership of Kloak Bros. & Co. Following a loss of the goods by fire and a suit upon the policy by Wagner & Chabot, the insurance company pleaded a provision of the policy to the effect "that the entire policy, unless otherwise provided by agreement indorsed on or added to said policy, should be void if the entire interest of the plaintiffs in the property insured thereunder were other than unconditional and sole ownership," and averred that the title of the plaintiffs was not that of unconditional and sole ownership, as stipulated, and hence that the policy was void. A waiver of the provision quoted was pleaded, to which was opposed a further provision of the policy that—

"No officer, agent, or representative of the defendant shall have such power or be deemed or held to have waived such provisions or conditions, unless such waiver, if any, shall be written upon or attached to said policy."

No waiver of the provision first quoted was written upon or attached to the policy, but it was shown in the proof that the agent of the insurance company, at the time of the issuance and delivery of the policy, was informed that the goods in fact belonged to Kloak Bros. & Co. We quote as pertinent to this case what was said by our Supreme Court in disposing of the issue of waiver in the case cited as follows:

"There is no dispute about the fact that W. G. Tobin was the agent of the Westchester Fire Insurance Company at San Antonio, and that he had full power to make the contract of insurance, that he did, in fact, make it; and when he issued the policy he knew that Wagner & Chabot were not the sole owners of the property, and that the policy did not truly state their interest in it, but that they were agents holding it for Kloak Bros. & Co., of Cincinnati, Ohio. By issuing and delivering the policy, Tobin waived the conditions requiring that the interest of the payees named therein should be truly stated, and the condition that the interest of the assured should be the unconditional and sole ownership of it. He knew that as warranties of existing facts they were false. Insurance Co. v. Ende, 65 Tex. 123; Insurance Co. v. Camp, 71 Tex. 507, 9 S. W. 473; Insurance Co.

v. Holcomb, 89 Tex. 410, 34 S. W. 915; Eames v. Home Ins. Co., 96 U. S. 621.

"The ground upon which the courts hold that such conditions are waived under the given state of facts is broadly stated in Insurance Co. v. Ende, cited above, by Judge Stayton in the following quotations from the authors named: 'To deliver a policy with full knowledge of facts upon which its validity may be disputed, and then to insist upon these facts upon grounds of avoidance, is to attempt a fraud. This the courts will neither aid nor presume, and when the alternative is to find this, or find that, in accordance with honesty and fair dealing, there was an intent to waive the known ground of avoidance, they will choose the latter. Such an issue is tantamount to an assertion that the policy is valid at the time of delivery and is a waiver of the known ground of invalidity'—citing May, Ins. § 497. In support of the same proposition, Judge Stayton quotes as follows: 'The insurer is estopped from setting up the breach of any condition of the policy when at the time of its issue it knew that the condition was inconsistent with the facts, and the assured has been guilty of no fraud. * * * When the insurer issues a policy to the assured without any written application, containing conditions inconsistent with the risk, * * * it is estopped from setting up a breach of such conditions in defense of an action upon the policy' —citing 2 Wood, Fire Ins. § 427. The proposition is sustained by a large number of authorities cited by the learned judge who wrote that opinion. Judge Stayton added the following: 'Under the facts shown to have existed, it must be held that the appellant, by receiving the premium for insurance with knowledge of the true state of the title of the property insured, is estopped from denying the right of the appellee to recover on the ground that the interest of the assured in the property was other than the entire, unconditional, and sole ownership, for his own use and benefit.'

"It is claimed by the defendant in error that the policy itself prohibited any agent of the company to waive any of its conditions except it be done in writing. To this position our Supreme Court has made a clear and distinct answer in the case of Morrison v. Insurance Co., 69 Tex. 353, 6 S. W. 605, in which it is held that an agent who has the power to make the contract of insurance, to issue the policy, and, in fact, exercise the highest authority which the law confers upon the corporation, stands in the place of the corporation itself, and that, having the authority to contract, he, no more than the corporation, can be bound to place his contract in writing, because it is a limitation upon the exercise of the authority conferred upon him. Insurance Co. v. Lee, 73 Tex. 646, 11 S. W. 1024. It is not necessary for us to inquire whether these decisions were in accord with the weight of authority when they were made, for we are not inclined to overrule them, and change a rule already established, which, in the judgment of the court, is salutary and valuable in protecting the rights of those who deal with insurance companies.

"We therefore hold that, when Tobin issued the policy in the name of Wagner & Chabot, with a knowledge of the ownership and title of the property insured, he, for the company, waived the provisions relied upon which would

avoid the contract, because those provisions are entirely inconsistent with an honest intention on the part of the insurance company to make a valid contract. After such a contract has been executed and delivered by an agent with the ample powers which were conferred upon Tobin, the premium received and appropriated by the insurance company, and after the assured, in reliance upon the validity of the contract, has suffered a loss without fault on his part, the courts will not hear the insurance company to say that it knowingly made and delivered to the assured what it knew at the time to be an invalid policy, and that therefore it is not liable for the loss sustained."

As it seems to us, the case cited and the quotation therefrom that we have made is conclusive on the question we now have before us. It may not be amiss, however, to further say that Phillip Kaufman, under the terms of our statutes (V. S. Tex. Civ. Stats. art. 4961), was an agent of the appellant company "as far as relates to all the liabilities, duties, requirements, and penalties set forth" in the chapter of which the article is a part. The policy declared upon was issued by him, and the evidence shows it was in fact not forwarded to the company for approval. He knew or thought he knew the particular automobiles which it was his purpose to insure. Not only the policy in terms declares that it was its object and intent to cover, subject to conditions named in the policy, every automobile owned and for sale by the insured, but Phillip Kaufman testified that such was his purpose at the time of the issuance of the policy of February 8, 1919.

There is no evidence showing or. tending to show that at the time he delivered to the appellees a passbook or gave them forms of certificates upon which to make entries or demanded any report from them, nor does the policy declared upon in terms provided that more than one report, entry upon a passbook, or certificate shall be made of the same automobile or automobiles after once such report, entry, or certificate has been made. We think the transaction must be construed as one in which the policy of 1919 was but a renewal of the policy of 1918, even though strictly and technically it should be construed otherwise, and that evidently the agents issuing the policy of February 8, 1919, had in mind the report and certificates made in November and January under the old policy, and therefore were content to make no further investigation. Under such circumstances, we think the issue of waiver presented by the appellee in this case must be maintained, and that the mistake of the agent in omitting from the certificates made on January 10, 1919, automobiles then actually on hand and later actually destroyed by the fire ought not to be made chargeable to the appellees. Mr. Cooley in his Briefs on the Law of Insurance, vol. 3, pp. 2652,

2653, refers to the case of Wagner & Chabot v. Insurance Co. above cited, and also to a case of like import, Continental Fire Ass'n v. Norris, decided by our Court of Civil Appeals of the Third District, reported in 30 Tex. Civ. App. 299, 70 S. W. 769, and adds that:

"Even though a policy provides that no agent shall have power to waive or modify any of the stipulations thereof, a condition in the policy is waived if it is issued by the insurer's agent with knowledge of facts violating the condition. Bartlett v. Fireman's Fund Ins. Co., 77 Iowa, 155, 41 N. W. 601. This rule is in Quinn v. Metropolitan Life Ins. Co., 10 App. Div. 483, 41 N. Y. Supp. 1060, bottomed on the theory that, as the contract is imputable to the company, it does not involve the authority of the agent to waive forfeitures or conditions, but is based on the act of the company in delivering the policy with knowledge. And in Wooldridge v. German Ins. Co., 69 Mo. App. 413, the court said that the estoppel would not be affected by the fact that the policy provided that the agent had no authority to waive any of the terms or provisions of the policy, there being no notice of such limitation in the application."

We approve what has been said by the authorities from which we have quoted, and accordingly all assignments of error involving the question of waiver are overruled.

There are several other assignments of error relating to incidental rulings in the case that we think have been sufficiently disposed of by what we have already said. All are accordingly overruled, and the judgment is affirmed.