**AMERICAN EAGLE FIRE INS. CO. v. BURDINE.**

No. 4490.

United States Court of Appeals,
Tenth Circuit.

Nov. 10, 1952.

Walter D. Hanson, Oklahoma City, Okl. (Stephen G. Evans, Oklahoma City, Okl., on the brief), for appellant.

Hal Welch, Hugo, Okl., for appellee.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

American Eagle Fire Insurance Company (herein called the insurer) through its agent, Horace M. Pardue, issued to R. E. Burdine (herein called insured) a provisional or monthly reporting type fire insurance policy covering his stock of merchandise, machinery, furniture and fixtures. On January 9, 1951, insured suffered property loss by fire, and shortly thereafter submitted proof of loss which was rejected by the insurer because it was considered to be false, fraudulent and excessive. On May 10, 1951, insured brought this declaratory judgment action to determine its liability under the policy and appeals from an adverse judgment.

The specific questions involved are whether the insurer is liable at all because of the alleged fraud of the insured in submitting his proof of loss, and if so, the extent of its liability under the provisional or reporting terms of the policy.

According to the findings of the trial court, fairly supported by the evidence, the insured owned a retail business in Hugo, Oklahoma. For more than five years he insured his stock of merchandise, machinery, furniture and fixtures through the insurer under a reporting form policy procured from and issued by the insurer's policy writing agent, Horace M. Pardue, the policy being renewable annually on June 7. On the expiration date the agent would each year issue an exact renewal policy, thus maintaining continuous insurance for the insured. However, on June 7, 1950, the agent, without the knowledge of the insured, neglected to issue a renewal policy, and the insurance expired.

Insured's property was not again covered by insurance until September 23, 1950 when the agent wrote a binder letter to his company renewing the policy which expired June 7, 1950. Without the knowledge of the insured that his policy had expired and had been renewed by a binder letter, the agent went to insured's place of business on September 23 or 24 to determine the value of the insured's property for coverage purposes, and was advised by the insured that the value of his stock and fixtures, including electrical appliances and farm implements, was in excess of $30,-000.00. Two or three days later, the agent again wrote his company extending the coverage of the policy to include electrical appliances and farm implements, the insured having expanded his feed and seed business to a farm implement and electrical appliance business. It was stipulated by the parties that these letters bound the insurer to an insurance policy under the same terms and conditions and the same limits as the previous insurance policy.

After the fire, on advice of counsel, the insured submitted his proof of loss in the amount of $55,013.66, representing the total amount of his inventory without taking into consideration salvage values, property not damaged, property in which insured had only a partial interest held under "floor plan" with certain companies and specific insurance.

It was finally stipulated at pre-trial that the total loss sustained by the insured was $30,590.48, and the insurer, relying upon Bockser v. Dorchester Mut. Fire Ins. Co., 327 Mass. 473, 24 A.L.R.2d 1215, 99 N.E.2d 640, takes the position that the submission of the excessive proof of loss fraudulently voided all liability under the policy.

The evidence shows without dispute that after this suit was filed, the insured obtained other counsel under whose advice he submitted a corrected proof of loss reflecting the actual value of the property destroyed, and he also submitted himself to questioning touching matters pertaining to the loss. It was stipulated that the insured had himself acted in good faith in making the proof of loss and without any intent to defraud, but it is insisted that his attorney-agent was not free from fraudulent intent in the preparation and submission of the grossly excessive report and insured is bound by his acts.

The trial court concluded that in the light of the stipulation, the forfeiture provisions of the policy should not be enforced. Even under Bockser v. Dorchester Mut. Fire Ins. Co., supra, an intent to defraud would not be presumed, and the facts here concerning the preparation and submission of the report under advice of counsel are just as susceptible to an inference of honest mistake of judgment as of fraudulent intent. In these circumstances, the trial court's conclusions are certainly not clearly erroneous, and they must stand.

The monthly reporting provisions of the policy contain a Value Reporting Clause, the pertinent portions of which require the insured to report to the insurer not later than thirty days after the last day of each month the total value of the property insured and all specific insurance in force. It is further provided that upon the failure of the insured to so report, in the event of loss, the last report of values, filed prior to the loss, will prevail. And it is further provided that if the delinquent report should be the first report of values, then the policy will cover not exceeding 75% of the applicable limit of liability named in the policy, in this instance 75% of $30,000.00.

The policy also contains a Full Reporting Clause prescribing a formula for computing the liability of the insurer. Under this formula, liability is limited to that proportion of any loss which the last reported value bears to the actual value at the time of the report, less the value of any specific insurance.

This type of policy is designed to afford an owner of a business with a fluctuating inventory the privilege of adjusting his insurance coverage to the value of his monthly inventory, subject only to a maximum. The last monthly report of values determines the amount of the insurance in force and the premium thereon. Camilla Feed Mills v. St. Paul Fire & Marine Ins. Co., 5 Cir., 177 F.2d 746, 13 A.L.R.2d 713; Aetna Ins. Co. v. Rhodes, 10 Cir., 170 F.2d 111; Columbia Fire Ins. Co. v. Boykin & Tayloe, Inc., 4 Cir., 185 F.2d 771.

Value reports under the provisions of the policy were made to the insurer from June, 1945 until January, 1950, more or less regularly, by Pardue the agent. No reports were submitted to the insurer for the period from January, 1950 through May, 1950 under the policy expiring June 7, 1950, until shortly after the binder letter was written on September 23, 1950. On September 27, 1950 the insurer received five reports from the agent, the last dated May 30, 1950, reporting a valuation of the insured property of $12,114.00. No reports were filed with the insurer bearing dates subsequent to May 30, 1950.

Construing and applying the formula set out in the policy, and taking the last report actually received by the insurer in the amount of $12,114.00, the insurer takes the position that its liability under the policy is limited to $12,114.00/$41,406.59 (insured's interest at the time of the loss, less $3,000.00 specific insurance) X $27,568.82 (alleged amount of stipulated loss, less $3,000.00 specific insurance) or $8,065.59.

In the alternative, it is suggested that if the last value report of $12,114.00 dated May 30, 1950 made under the policy expiring June 7, 1950 is not taken as the last report under the binder policy, there is no report under the latter policy, and the liability of the insurer is based upon 75% of the limit of liability in the policy, or $22,500.00, and the formula would be $22,500.00/$41,406.59 X $27,568.82, equaling a liability of $14,980.67.

The trial court held that the oral information furnished agent Pardue by the insured Burdine on or about September 24 constituted and amounted to a report of values of stock and fixtures under the value reporting provisions of the binder policy. And taking that reported value in the amount of $30,000.00 and applying the formula prescribed in the Full Reporting Clause of the policy, the court arrived at the insurer's liability by taking the proportion of $30,000.00 reported value, less $3,-

000.00 specific insurance, over $30,000.00 actual value, less $3,000.00 specific insurance, times the stipulated loss in the sum of $30,590.48, less specific insurance, or a liability of $27,590.48. The equation would thus be as follows:

$$\frac{\$30,000.00 - \$3,000.00 \ (\$27,000.00)}{\$30,000.00 - \$3,000.00 \ (\$27,000.00)}$$
$$\times \ \$30,590.48 - \$3,000.00 \ (\$27,590.48)$$
$$= \$27,590.48$$

If we accept the findings and conclusions of the trial court as not clearly erroneous, both of the theories advanced by the insurer for the determination of its liability under the policy are clearly inapplicable.

The trial court's conclusion that the oral information furnished the agent by the insured on September 24 was a monthly value report under the binder policy, is based upon its further holding to the effect that Pardue was the agent of the insurer with both implied and apparent power to assist in the preparation of monthly reports of values by insurance customers with monthly report form policies, and as such agent was authorized to receive such reports and hold them in his office or transmit them to the home office as he saw fit; and further that the insurer is estopped to dispute the authority of its agent to act in its behalf in the preparation of, receipt of, or transmission of the monthly reports of value to the home office.

As we have seen, it is a condition of the policy that the insured shall report to the company not later than 30 days after the last day of each calendar month, the total value of the property to be covered by insurance, and failing to do that, the last report received by the company governs the amount of insurance. But it is a well recognized principle of equitable waiver and estoppel that if an insurance company through those who are authorized to speak for it, either by words or conduct, has induced an insured to refrain from doing that which he is obligated to do under the conditions of the policy, it will be deemed to have waived the requirements and may be estopped to deny the authority of its agent on whose conduct or representations the insured relied to his detriment. See Cochran v. Order of United Commercial Travelers of America, 10 Cir., 143 F.2d 82, citing Oklahoma cases. See also Atlas Life Ins. Co. v. Unger, 198 Okl. 234, 177 P.2d 98.

In Columbia Fire Ins. Co. v. Boykin & Tayloe, Inc., supra, the suit was upon a policy identical in terms and conditions to the one before us. The question was whether the liability of the company was to be determined by the value report prepared by the agent from information obtained from the insured and actually received by the company before the loss by fire or determined by the last report prepared by the agent on information furnished to him by the insured but not transmitted to the company until after the fire. There, as here, it was the custom of the insurance agent to prepare reports as the agent of the insurer, on forms furnished him by the home office from information which he procured from the insured in casual personal meetings, over the telephone, or in planned meetings, and to transmit them to the company at irregular intervals, sometimes allowing several monthly reports to accumulate before transmission. There, as here, the insurer registered no protest to the insured as to this procedure but habitually accepted the reports as a compliance with the terms of the policy.

The appellate court agreed with the trial court that the insurer was equitably estopped to plead and irrevocably waived the monthly value report requirements of the policy, basing its decision squarely upon the company's approval of the agent's course of conduct in the dilatory preparation and submission of the reports. Following Virginia law, the court held that the insurance agent, within the general scope of the business he transacted was

pro hac vice the insurance company; that what he knew the insurance company knew, and what he did the insurance company did. See Virginia Automobile Mutual Insurance Co. v. Brillhart, 187 Va. 336, 46 S.E.2d 377.

The court distinguished that case from Peters v. Great American Insurance Co., 177 F.2d 773, decided by the same court, pointing out that in the Peters case the insured, not the agent, made reports to the company on forms provided it by the company, and that the report of values before the fire was deliberately understated. The court emphasized a complete absence of a course of conduct in the Peters case deemed controlling in the Columbia Fire Ins. Co. case, supra. That similar course of conduct also forms the equitable basis of the trial court's decision here. See also Camilla Feed Mills v. St. Paul Fire & Marine Ins. Co., supra; and Wallace v. World Fire & Marine Insurance Co., D.C., 70 F. Supp. 193, 198, affirmed per curiam, 9 Cir., 166 F.2d 571.

The decision in the last analysis rests upon sound equitable considerations, and as in the Columbia Fire Ins. Co. case, supra, the equities in our case are strongly in favor of the insured who, without knowledge that his policy had ever lapsed or that his value reports had not been promptly transmitted to the home office of the insurer, in perfectly good faith gave information to the agent, Pardue, prior to the loss, to the effect that his inventory was worth in excess of $30,000.00. This is the only report form, or kind of report, he had ever made to the company under the provisions of the policy, and he had a right to rely upon the course of conduct which lead him to believe that such reporting was in compliance with his policy requirements. He did not attempt to understate his inventory prior to the loss, or attempt to amend his report after the fire, as each insured did in the Peters case, supra, the Camilla case, supra, and the Wallace case, supra.

■ To be sure, the agent could have acted both for the insurer and the insured.

He could have acted for the insured in the preparation of the reports and for the insurer in the reception of them—as indeed he did. There is no legal barrier to this dual role on the part of the agent. He may serve both the insured and insurer so long as their interests do not conflict and his duties are not inconsistent. Home Insurance Co. of N. Y. v. Southern Motor Coach Corp., 171 Okl. 94, 41 P.2d 870; Georgia Home Ins. Co. of Columbus, Ga. v. Choctaw Cotton Oil Co., 153 Okl. 194, 5 P.2d 152; Insurance Co. of North America v. Burton, 147 Okl. 112, 294 P. 796.

■ But when the question whose agent is he arises with respect to a conflict of interest, the law will not hold the insured for an act or omission of a general agent who under the scope of the actual or apparent authority of the insurer leads the insured to believe that what he has done in relationship to his policy amounts to a compliance.

■ When on September 23 or 24 the insured orally informed the agent that his inventory was about $30,000.00, he did no more or no less than he had done in all other months during the tenure of his policies to report the monthly value of his inventory for purposes of coverage. It had been sufficient in the past, and it is sufficient now. We agree with the trial court that this report constituted the last monthly report of values under the binder policy.

■ The insurer insists that even if this be so, its liability under the policy should be no more than $30,000.00/$41,-406.59 X $27,568.82 or $19,974.23. The short answer to this contention is that under the plain and unambiguous terms of the policy the denominator in the formula is the actual value at the time of the report, not the insured's interest at the time of the loss as contended. Thus the denominator is $30,000.00 rather than $41,-406.59.

The insurer finally complains of the action of the trial court in allowing interest on the judgment from May 10, 1951, the

date of commencement of this suit, on the basis of its findings of fact that the amount of plaintiff's loss was fairly ascertainable at such time, as demonstrated by the stipulation as to insured's loss, and was certainly within the knowledge of the agent.

Since Fidelity-Phenix Fire Ins. Co. of N. Y. v. Board of Education of Town of Rosedale, 201 Okl. 250, 204 P.2d 982, the law seems settled in Oklahoma to the effect that interest under an insurance contract is due from a date provided in the terms of the policy or a date ascertainable from the terms of the contract.

No specific date for payment of fire loss is provided in the policy; however, a reading of the policy clearly reveals that a specific method for determining the liability of the insurer is set out. The insurer in order to ascertain its liability must have the amount of the last report of values, the actual value of the insured's property at the time of the report, and the amount of the insured's loss, together with the amount of specific insurance. Therefore, the conclusion must be that as soon as the insurer has that information in hand, payment to the insured would be due.

The evidence reveals that the insurer, shortly after the fire, had agents and adjusters at the scene of the loss going over insured's property, his books, checking salvage values, property not destroyed, property in which insured owned only a partial interest, and property specifically covered by other insurance.

The insurer, through its agent Pardue, knew the actual value of the property at the time of the report, as well as the reported value. The insurer also knew through its agents and adjusters the actual loss, and so stipulated on pre-trial. With this information, the liability was ascertainable under the terms of the policy. In these circumstances the trial court was certainly justified in establishing the date of the filing of the suit for the commencement of interest.

The judgment is affirmed.