The HANOVER INSURANCE COM-
PANY, Plaintiff,

v.

Nelson McLONEY, d/b/a McLoney &
Sons, Defendant.

No. 962.

United States District Court
E. D. Kentucky,
Covington Division.

March 6, 1962.

Supplemental Memorandum
April 23, 1962.

Buckley & Hunkins, Lexington, Ky., for plaintiff.

Clay & Edwards, Mount Sterling, Ky., for defendant.

SWINFORD, District Judge.

This is an action, properly brought, for a declaratory judgment under the provisions of 28 U.S.C.A. § 2201. It involves the construction and application of terms of two fire insurance policies. The plaintiff, The Hanover Insurance Company, is engaged in the business of selling fire insurance. The defendant, Nelson McLoney, operated two separate businesses, a hardware and appliance store and an agricultural and construction equipment dealership. They were, however, operated as one business and will be so referred to hereafter. This business was located at Cynthiana, Kentucky.

The firm of Cummins, Renaker, Whalen & Smith, an independent insurance agency in Cynthiana, was the local agent for the plaintiff, a New York corporation. Mr. Gerald Whalen, who testified as a witness in the trial of this case, was the member of the insurance agency who personally wrote the two policies of insurance which are the basis of this action. Policy No. 607, identified in the record as the hardware policy, is dated November 1, 1957 with certain endorsements dated March 29, 1960. Policy No. PF G2 6864 (referred to hereafter as 6864), identified in the record as the equipment policy, was written on November 1, 1959 with an endorsement of February 2, 1960.

At the time these policies were written, the local agent, Mr. Whalen, and two other agents of the plaintiff corporation from the Louisville and Lexington, Kentucky offices were present at the location of the property. They discussed the coverage with Mr. McLoney, observed the kind of business and the conditions under which it was being conducted. At the time of the inception of the policies, when both the local agent and the representatives of the plaintiff from Lexington and Louisville were present on the defendant's property, the defendant explained to them the nature of his business and that there was throughout the year a radical fluctuation of equipment he held for retail sale. The property covered was displayed both in a building, where the store and warehouse were located, and a storage lot. The items were moved from time to time from the store and warehouse to the storage lot and back again.

These conditions, which were somewhat peculiar to Mr. McLoney's situation, were explained in detail to the three agents of the plaintiff, with the added emphasis from Mr. McLoney that he was in debt and had to have full coverage for any eventuality. It was because of these somewhat unusual circumstances that two policies were issued by the company. This fact was brought out in an avowal at the time of trial of the case by the witness, Mr. Whalen. The court at the time excluded the evidence as incompetent but now reverses that decision and holds that this portion of the evidence by the witness, Mr. Whalen, is competent.

The hardware policy, No. 607, provides insurance on stock, materials and supplies, consisting principally of hardware, equipment and appliances of the insured to a liability limit of $54,000. The policy also covers furniture, fixtures and machinery. Its coverage is one hundred per cent of any loss within the liability limit and on condition that the insured observe the monthly reporting of inventory values as required by condition (11) of the "Multiple Location Reporting Form" of

the policy. That section and condition (12), "Full Reporting Clause", provide as follows:

"11. Value Reporting Clause— It is a condition of this policy that the Insured shall report in writing to this Company not later than thirty (30) days after the last day of each calendar month, the exact location of all property covered hereunder, the total actual cash value of such property at each location and all specific insurance in force at each of such locations on the last day of each calendar month. At the time of any loss, if the Insured has failed to file with this Company reports of values as above required, this policy, subject otherwise to all its terms and conditions, shall cover only at the location and for not more than the amounts included in the last report of values less the amount of specific insurance reported, if any, filed prior to the loss, and further, if such delinquent report is the first report of values herein required to be filed, this policy shall cover only at the respective locations specifically named herein and for not exceeding 75% of the applicable limit of liability of this Company specified in the Limit of Liability Clause.

"12. Full Reporting Clause— Liability under this policy shall not in any case exceed that proportion of any loss hereunder, (meaning the loss at the location involved after deducting the liability of specific insurance, if any), which the last reported value filed prior to the loss, less the amount of specific insurance reported, if any, at the location where any loss occurs bears to the total actual cash value less the amount of specific insurance, if any, at that location on the date for which report is made. Liability for loss hereunder, occurring at any location acquired since filing the last report, (except as provided by the Value Reporting Clause) shall be apportioned in a like manner except that

the proportion used shall be the relation that values reported at all locations less the amount of reported specific insurance, if any, bear to the total actual cash values less the amount of specific insurance, if any, at all locations on the date for which report is made."

The pertinent provisions of the equipment policy, No. 6864, are conditions (8) (a) and (d):

"The Assured shall keep an accurate record of all property insured hereunder and the values thereof (including the property of others covered by this policy), and report to this Company on or before the fifteenth day of each month the total of all such values at risk hereunder at each location specified in Clause 6(b), segregated as to values inside and outside building together with the total values under Clause 6(c), as of the last day of the preceding month and pay premiums at the monthly rates of * * *.

"In the event of loss or damage to the property insured hereunder, this Company shall be liable for no greater proportion of such loss or damage than the total values last reported by the Assured prior to the loss or damage bear to the actual total values at risk hereunder as of the date for which such report was made."

The inventory value reports specified by the policies were last filed on March 31, 1960 and went into the company on April 14, 1960. Copies of these reports were kept in the office of the local agent, Cummins, Renaker, Whalen & Smith.

On July 10, 1960, the building in which the store and warehouse were located was completely destroyed by fire. It is stipulated that the property loss covered by the hardware policy, No. 607, amounted to $49,716.03. The property loss under the equipment policy, No. 6864, was stipulated to be $34,599.62.

Under the hardware policy monthly reports of value had been regularly made from the period November 30, 1957

through March 31, 1961. Under the equipment policy monthly declarations of value had been made from the period January 15, 1959 through April 14, 1960.

The insured seeks to explain his failure to make these monthly valuation reports for April, May and June by stating absences in his office of the bookkeeper and himself because of illness and the dependence upon inexperienced office help. On two or three different occasions, from the time of the last report in April and before the fire, the local insurance agency, Cummins, Renaker, Whalen & Smith, called the office of the insured and made inquiry about why the reports had not been sent. In the words of the bookkeeper: "They were calling me to aware me of the fact that my reports were delinquent and, in no other words, get them in as quick as I could, and I explained to them that my records weren't sufficient to get my reports in, that just as soon as they were sufficient, I would get my reports to them." It is also in the record that on former occasions reports had been filed late but were accepted by the plaintiff without complaint and without questioning their accuracy.

Value-reporting fire insurance policies are not written for the purpose of insuring any particular piece of property but are designed to cover situations such as are presented in the instant case of stocks of goods or merchandise which are held by the insured for either wholesale or retail sale. They might be better denominated "stock of goods" policies insuring the owner against loss by payment for whatever property may happen to be present in his stock or location, up to the amount of a liability limit stated in the policy. The insurer and insured recognize that the amount of property may vary from time to time. At the beginning of the policy period the insured pays what is called a "provisional premium". The method of determining the amount of the premium is based on an approximation of what will be the average amount of goods on hand throughout the period of coverage.

In order to preserve the integrity of the understanding between the contracting parties, and in the interest of arriving ultimately at an equitable premium, the insured is required to periodically (in this case, monthly) report the stock of goods on hand. At the end of the policy period the premium is computed, based on the amount of values at risk throughout the policy period as reflected in the periodic value reports. The insured either pays additional premiums or is given a refund according to how the provisional premium compared to the actual premium. In order to induce the insured to make accurate reports and thus to provide a true premium base, a typical provision of this kind of policy is one that limits the liability of the insurer for any loss to the proportion which the amount reported at risk bears to the actual amount at risk, assuming a difference in reported value and actual value.

It is at once apparent, therefore, that an increase in inventory from one reporting period to the next would tend to increase the amount of the actual premium, but that an increase in inventory or other property at risk after the most recent report before a loss would not result in a premium increase.

Policies of fire insurance containing provisions such as the two policies in question have been before courts in other states and before the federal courts. Aetna Ins. Co. v. Rhodes, 10 Cir., 170 F.2d 111 (1948), and cases cited in the opinion; American Eagle Fire Ins. Co. v. Burdine, 10 Cir., 200 F.2d 26 (1952).

Notwithstanding the accepted value and validity of fire insurance policies containing these conditions, their construction and application must accord with recognized rules of law to be applied in the determination of the rights of insurer and insured.

In the first place, it is the long established principle that it is the duty of the court in determining the liability of the insurance company to give effect to all of the provisions of the policy and

to liberally construe them in favor of the insured, recognizing, of course, that the court is without right to add to or strike from the conditions of the policy. Sun Indemnity Co. v. Dulaney, 264 Ky. 112, 89 S.W.2d 307.

It is an equally well recognized principle of equitable waiver and estoppel that if an insurance company through those who are authorized to speak for it, either by words or conduct, has induced an insured to refrain from doing that which he is obligated to do under the conditions of the policy, it will be deemed to have waived the requirements and may be estopped to deny the authority of its agent on whose conduct or representations the insured relied. American Eagle Fire Ins. Co. v. Burdine, 10 Cir., 200 F.2d 26 (1952).

Since there is a distinction in the two policies at issue by reason of their terms and conditions, the court will consider them separately in the order in which they are offered.

The hardware policy, No. 607, limits the liability of the insurer to the most recently reported value which was for the month of March preceding the fire. This requirement, under condition (11) of the policy, seems reasonable in every respect. It states plainly that "at the time of any loss, if the Insured has failed to file with this company reports of values as above required, this policy, subject otherwise to all its terms and conditions, shall cover only at the location and for not more than the amounts included in the last report of values * * filed prior to the loss." There is nothing in this language that requires construction. The requirement is clear and the penalty for failure to file the monthly reports is contained in the provision which fixes the maximum recovery. The liability of the insurer is fixed as the amount of inventory stated in the most recent report of values, which would be as of March 31, 1960. The insured should recover on the policy the sum of $47,-314.05.

The equipment policy, No. 6864, presents a more complex question. The value-reporting clause does not include an expression of the consequences or penalty for failure to make reports. Since the Court has been unable to find any case in point construing or applying a value-reporting clause which does not include a penalty, the issue must be resolved by referring to general principles of the law of contracts.

Any clause in a policy of insurance requiring an act to be done or performed by the insured makes the act a condition of the covenant or promise of insurance. Such a provision manifestly limits the obligation of the insurance company. It has a right to depend upon the insured complying literally with the condition subsequent which is the consideration for the performance of the insurer's part of the agreement. See Sec. 260(b), Restatement of the Law of Contracts.

The Court of Appeals of Kentucky applies this test in insurance law and sustains the rule that recognized conditions of insurance policies placing a burden upon the insured would defeat recovery on the policy where there was a failure of performance. It is accepted as the law of Kentucky that such provisions are promissory warranties, a breach of which avoids liability on the policy. National Union Fire Insurance Company v. Hendrix, Ky., 337 S.W.2d 875; National Surety Corporation v. Dotson, 6 Cir., 270 F.2d 460 (1959); Webb v. Stonewall Insurance Co., Ky., 347 S.W.2d 506 (1961); Sun Indemnity Co. v. Dulaney, supra; Jefferson Realty Co. v. Emp. Liability Corp., 149 Ky. 741, 149 S.W. 1011 (1912).

It is the opinion of this court that the Kentucky law would require a holding that the value-reporting clause is a condition to liability on the policy. Attention is called to the fact that the clause is found in a portion of the policy under the heading "Conditions".

The iron safe clause requiring periodical inventories and a complete record of all business transactions is recognized in Kentucky as a valid controlling stipulation. World Fire & Marine Ins. Co. v. Tapp, 279 Ky. 423, 130 S.W.2d 848;

Watkins v. California Ins. Co., 296 Ky. 434, 177 S.W.2d 566. A provision forbidding or limiting additional insurance is a recognized valid condition. These provisions clearly express conditions upon which the company assumes liability and that a breach will deny recovery upon the contract.

■ The value-reporting clause is a condition analogous to the "iron safe" clause and the "additional insurance" clause and a failure to comply with its requirements by the insured can defeat liability of the insurer.

On this premise it would appear that the plaintiff has been released from its liability on the equipment policy, No. 6864. It is not contended by the plaintiff that a failure to make the monthly reports invalidates the policy. It only asks that the recovery be limited to the April 14 report.

It is the opinion of the court that the failure of the insured to make the value reports for April, May and June was a breach of a covenant for which the policy could have been forfeited and that a failure to so act on the part of the insurer was an election to waive its contractual rights and to leave in full force and effect the policy and all of its terms and conditions at the time of the fire. It was the duty of the insurer to act within a reasonable time to enforce the forfeiture.

The plaintiff does not contest the fact that the defendant lost approximately $35,000 worth of goods which were covered by the terms of the policy and on which the premium had been paid. Its defense rests upon the belief that the latest value-report would provide the measure of liability on the policy, notwithstanding an absence of language in the contract that could reasonably admit of such an interpretation. The policy does not limit liability to the last report filed prior to the loss. It contains a "full reporting" or "honesty" clause. Section (8) (d) provides that if the last report prepared by the insured prior to the fire undervalues the property, then the insurer shall be required to pay only a comparable percentage of the loss.

■ There is nothing in the record to indicate, nor is it even claimed, that the defendant at any time filed a false report. There is no question of bad faith and the record clearly shows that the local agent, at least, was in full knowledge of the whole circumstances of McLoney's business, including the fact that he had at the time of the fire a much larger inventory than he had at the time of the report on April 14. All of this was amply covered by the policy for which this agent was responsible and for which the defendant had in good faith paid the demanded premium. An agent who takes the application, issues the insurance, and delivers the policy, may by words or conduct waive the provisions of the value-reporting clause contained in the policy. Glens Falls Insurance Company v. Elliott, 223 Ky. 205, 3 S.W.2d 219.

■ Where the insurer in possession of the facts approves by its conduct an omission of the insured to comply with the provisions of the policy and thereby pursues a course of action which leads the insured to believe the policy would remain in force, notwithstanding his failure to fulfill the condition, the insurance company cannot take advantage of such omission in the event of a loss. The doctrine of waiver is applicable and the principle of equitable estoppel fully recognized in this state. Westchester Fire Ins. Co. of New York v. Gray, (Ky.) 240 S.W.2d 825, 33 A.L.R.2d 608.

This rule is more steadfastly applied where the forfeiture claimed is only as to a portion of the risk and the premium has been paid in a lump sum. Cookendorfer v. Pendleton Co. Farmers Fire Ins. Co., 287 Ky. 735, 155 S.W.2d 204.

A case more analogous to the case at bar than any other is American Eagle Fire Ins. Co. v. Burdine, 10 Cir., 200 F.2d 26. In that case the court pointed out that this type of policy is designed to afford an owner of a business with a fluctuating inventory the privilege of ad-

justing his insurance coverage to a monthly inventory, subject only to a maximum. The last monthly report of values determines the amount of insurance in force and the premium thereon. In passing upon the policy involved in that case, the court stated that the principle of equitable waiver and estoppel applies and if an insurance company had, either by words or conduct, induced an insured to refrain from making monthly reports which he was supposed, under the terms of the policy, to do, it would be deemed to have waived the requirements and should be estopped to deny the authority of its agent on whose conduct or representations the insurer had relied. See also Aetna Ins. Co. v. Rhodes, supra.

The plaintiff seems to rely on the non-waiver clause in the policy. This contention is without weight since under the Kentucky rule non-waiver provisions may be waived as readily as any other provision in the policy. New England Mut. Life Ins. Co. v. Springgate, 129 Ky. 627, 112 S.W. 681, 113 S.W. 824, 19 L.R.A., N.S., 227.

It is the opinion of the court that the insurer should be declared liable on Policy No. 607 only to the extent of the value at risk on April 14, 1960, in the sum of $47,314.05, and that the insurer should be declared liable to the full amount of the loss on Policy PF G2 6864 in the sum of $34,599.62.

Interest at the rate of 6% per annum should be allowed from January 30, 1961, the date of the filing of the complaint. 28 U.S.C.A. § 2201; American Insurance Company v. Lester, 4 Cir., 233 F.2d 778;

National Fire Ins. Co. of Hartford v. Board of Public Instruction, 5 Cir., 239 F.2d 370; American Eagle Fire Ins. Co. v. Burdine, supra.

The attorneys for the defendant will prepare and submit findings of fact, conclusions of law and judgment in conformity with this opinion.

### SUPPLEMENTAL MEMORANDUM

On March 6, 1962, in a memorandum opinion the court held that the plaintiff insurer is liable in the amount of $34,599.62 on policy PF G2 6864. Judgment was entered on March 13 for the sum of $81,913.67 which was the aggregate of the sums of $34,599.62, under policy PF G2 6864, and $47,314.05, under policy 607. Plaintiff has moved for an amendment to the judgment reducing the amount of recovery on policy PF G2 6864 to $30,000.

The ground for the motion is that the policy contains a provision limiting liability to this amount in the circumstances present here. Plaintiff points to the following policy language to support its position:

"6. *Limits of Liability:* The liability of this company shall not exceed $35,000.00 in any one loss, casualty or disaster, including salvage charges or other expenses or all combined subject to the following limits:

"(a) While in transit    $5,000.00

"(b) 1. While at the following location (s) owned, rented, under control of or used, in whole or in part, by the Assured:

| Locations | In Building | Outside Building |
|---|---|---|
| 936–37 S. Church Street, Cynthiana, Kentucky | $30,000.00 | $8,000.00 |
| 935–A Church Street, Cynthiana, Kentucky | $ 5,000.00 | $ NIL |

"2. * * *

"(c) * * *".

It is disclosed by the record that all of the loss involved occurred at the

936–37 S. Church Street location and to property located inside the building. The quoted portion of the policy seems to admit of no other interpretation than one limiting liability to $30,000. The insurer's liability could be as much as $35,000 only in a case where one fire destroyed property at risk located both in the building at 936–37 S. Church Street and outside the building at that address.

Defendant cites cases holding that an insurance policy covering property at two or more locations creates liability up to the full amount of the policy for a loss at any one of the locations. This principle is not disputed. It is not applicable here, however, for this policy goes to the extent of expressly limiting the liability of the insurer as to each of the named locations. And the liability limit for losses at 936–37 S. Church Street is $30,000. The memorandum opinion is changed accordingly.

The judgment is this day amended to reflect this liability limit.