**MOUNTAIN VIEW SPORTS CENTER, INC., Appellant,**

v.

**COMMERCIAL UNION ASSURANCE COMPANY, Alexander & Alexander, Inc., and Alfred Opp, Appellee.**

No. 3593.

Supreme Court of Alaska.

Sept. 21, 1979.

Murphy L. Clark and Stephen G. Dunning, Anchorage, for appellant.

Paul Waggoner, Biss & Holmes, Anchorage, for appellee Commercial Union Assur. Co.

Sarah Forbes, Wohlforth & Flint, Anchorage, for appellees Alexander & Alexander, Inc. and Alfred Opp.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

RABINOWITZ, Justice.

The major question presented by this appeal is whether the superior court erred in granting summary judgment against appellant Mountain View on the theory that it was not entitled to relief against any of the appellees. The rationale for the superior court's ruling is that the insured, Mountain View, failed to comply with specific fire insurance policy provisions which required it to make periodic reports as to the amount of its inventory on hand. Thus, both the insurance broker and his agency, as well as the insurance company, were held not liable for any loss caused by fire damages to the insured in excess of the last value of inventory reported.

The significant facts as developed in the context of the cross-motions for summary judgment are as follows. In 1974, appellant Mountain View purchased a provisional, or monthly reporting (stock value) type of fire insurance policy which was issued by appellee Commercial Union Assurance Company. The maximum coverage of the policy, as issued, was $250,000, and the purpose of the policy was to insure the physical inventory of Mountain View. The policy was obtained through the services of appellee Alfred Opp, an insurance broker and employee of Alexander & Alexander, an insurance brokerage corporation.

In December 1975, Mountain View, during the course of taking a year-end stock inventory, discovered that the value of its stock had significantly increased. According to Mountain View, it ascertained that the value of its physical inventory at the time exceeded $350,000. During the first two weeks of January 1976, Chris Goll, an employee of Mountain View who was authorized to obtain and alter insurance coverage for the corporation, attempted unsuccessfully on several occasions to contact Alfred Opp at his office for the purpose of increasing the inventory coverage to $350,-000.[1] On January 15, 1976, Goll succeeded in reaching Opp at the latter's home. According to Goll, the following telephone conversation took place:

Chris Goll 'Jesus Christ, you're a hard guy to get a hold of.'

Alfred Opp 'Why?'

Chris Goll 'I have been leaving messages for weeks with no response.'

Alfred Opp 'I've been quite busy and have been meaning to get by and talk with you.'

Chris Goll 'We've just finished a year-end inventory, found our stock levels were up and want to increase our coverage levels by $100,000.'

Alfred Opp 'All right, coverage is bound, I'll send you a copy of the binder later.'

Chris Goll 'We're all set then?'

---

1. In this regard Chris Goll's supplemental affidavit states, in part:

5. In December of 1975, a physical inventory at Mountain View Sports Center was performed as per state and federal tax requirements, such inventory showed stock levels greater than a year before.

6. Upon the finding of excess inventory, I attempted to call Alfred Opp at Alexander & Alexander, Inc., at their offices, at least three or four times in the first week of January, 1976, never reaching Alfred Opp, who was reported as not present, but always leaving a message thereafter, 'Have Alfred Opp call Chris Goll at Mountain View Sports Center.'

7. On the second week of January, 1976, I noted more inventory increases of an undeterminative amount and attempted again to call Alfred Opp at Alexander & Alexander, Inc., never reaching Alfred Opp who was reported as not present, but always leaving the message, "It is pertinent that Alfred Opp talks to Chris Goll, concerning an increase here at Mountain View Sports Center.'

Alfred Opp 'Yes.'

Opp's version is that Goll "told me that he had just completed their year-end audit, found that their inventory was higher than their insurance limit and wanted me to increase the insurance limit to $350,000." Opp agreed to "take care of it." The next morning Opp wrote the following memorandum:

> Mountain View Sports Center Increase inventory (stock reporting) to $350,000. Coverage bound 1/15/76, /s/ Alfred P. Opp.

Opp handed the memorandum to an employee of Alexander & Alexander and told her to "take care of it." Mountain View's file could not be located at that time and consequently no action was taken on the memorandum until after the fire occurred. On January 21, 1976, a fire destroyed inventory of Mountain View valued in excess of $350,000.

Pursuant to the terms of the original provisional fire insurance policy, Commercial Union paid approximately $245,000 to Mountain View.[2] The last written report of Mountain View's physical inventory on file with Commercial Union at the time the loss occurred was for September 1975, with a stated inventory valuation of $250,000.

Mountain View filed suit against Commercial Union, Alexander & Alexander and Alfred Opp, contending, in part, that Goll's January 15th telephone conversation with Alfred Opp was in effect both an oral report of inventory value in the amount of $350,000, and a request to Opp for an in-

crease in the coverage under the provisional fire insurance policy from $250,000 to $350,-000. Mountain View further contended that Opp's action, as agent for Commercial Union, bound the latter both as to increased coverage and the inventory value as reported by Goll to Opp.[3] Thereafter, all parties moved for summary judgment.

The superior court granted summary judgment in favor of Commercial Union, Alexander & Alexander and Alfred Opp. In its oral opinion, the superior court stated:

> I find that there was a requirement to fill out these inventory report forms, there was a failure to do so, that that was one of the conditions which all parties knew concerning the binding of . . . providing of coverage, and therefore I grant summary judgment to all 3 of the defendants.[4]

Two issues are raised in this appeal, namely, whether the superior court erred in granting summary judgment for appellees by holding that a written inventory value report was required in the circumstances; and whether the superior court was correct in awarding appellees full attorney's fees.[5]

In the superior court, and in their respective briefs before this court, appellees place primary reliance upon the value reporting clause of the policy that Commercial Union had issued to Mountain View. This portion of the policy provided:

> It is a condition of this policy that the insured shall report in writing to this Company not later than thirty (30) days

2. The full $250,000 was not paid as the policy contained a penalty provision which was made applicable in the event inventory values were underreported by the insured.

3. Mountain View's complaint contained additional claims for relief based on the assertion that Alexander & Alexander and Alfred Opp were negligent in failing to obtain adequate insurance coverage for Mountain View.

4. Subsequently, the prevailing parties moved for an award of attorney's fees pursuant to Rule 82, Alaska Rules of Civil Procedure. The superior court awarded appellees full attorney's fees without articulating in the record its reasons for its ruling. Pursuant to the trial court's decision, Commercial Union was grant-

ed an attorney's fee of $5,531.05 and Alexander & Alexander, together with Alfred Opp, received an award of attorney's fees in the amount of $2,604.65.

5. The issues of agency and negligence are not properly before this court having not been ruled on by the superior court. The trial court's award of summary judgment to Alexander & Alexander and Alfred Opp was only granted as to the second and third claims for relief in Mountain View's complaint. The claims based on agency and negligence were asserted in counts one and four of the complaint.

after the last day of each calendar month, the exact location of all property covered hereunder, the total actual cash value of such property at each location on the last day of each calendar month. At the time of any loss, if the insured has failed to file with this Company reports of values as above required, this endorsement, subject otherwise to all of its terms and conditions, shall cover only at the locations and for not more than the amounts included in the last report of values filed prior to the loss. . . .[6]

In *Alaska Foods, Inc. v. American Manufacturer's Mutual Insurance Co.*, 482 P.2d 842, 848 (Alaska 1971), we had occasion to explain the purpose of a "value reporting" type of insurance policy similar to the policy involved in this litigation. In part, we observed:

> Under this type of policy an annual premium is paid. The amount of the premium is flexible, depending on the value of the inventory reported each month by the insured as being on hand at the insured location. . . .
>
> . . . In the event of fire damage, the amount that the insurers agree to pay is based on the value of merchandise stated on the last monthly value report submitted by the insured prior to the loss.

With this background in mind, we now turn to the merits of this appeal. Both appellant and appellees moved for summary judgment in the superior court. As indicated in our summary of the record above, the facts in this case were substantially agreed to by all parties. The superior court granted summary judgment in favor of appellees based on the insurance policy's requirement that monthly inventory report forms be submitted in writing to Commercial Union Assurance Company. We reverse and direct that summary judgment should be entered instead in favor of appellant Mountain View Sports Center against appellees Opp and Alexander & Alexander.[7]

---

6. Appellees also rely upon the fact that Alexander & Alexander, Inc. regularly mailed blank inventory reporting forms to Mountain View. At the top of the reverse side of these report forms, in large black capital letters, was the following:

> WITHIN THE LIMITS SET FORTH IN THE POLICY YOU WILL BE FULLY COVERED ON THE PROPERTY INSURED (A) IF YOU REPORT VALUES FULLY AND (B) IF YOU REPORT ON TIME. THE OBLIGATION TO COMPLY WITH THE REPORTING PROVISIONS OF THE POLICY IS ONE FOR WHICH YOU HAVE THE RESPONSIBILITY.

Underneath the above statement are six numbered paragraphs, three of which are relevant to this issue. They state as follows:

1. WHEN TO REPORT: Unless otherwise specifically provided by a written endorsement, reports should be made up as of the close of business on the last day of each calendar month and are required to be filed within thirty days thereafter. Failure to comply with this requirement can result in underinsurance.

5. LIMITS OF LIABILITY: Your coverage in no event exceeds the limits of liability specified in the policy. But in order to recover up to those limits you must report full values even though they exceed the limits. The responsibility for obtaining full insurance protection is yours. If the specified limits are inadequate to give you such protection your agent or broker may be able to secure for you an increase in the limits or specific insurance, if you request such increased protection.

6. WHO SHOULD REPORT: The report should be made by you and signed by one of your responsible officials and not by your agent or broker. No agent or broker is authorized to relieve you of the responsibility of reporting values to the Company or to assume it for you. No notice respecting delinquency or deficiency in reporting is required, and no such notice shall relieve you of the consequences of your failure to comply with the reporting requirements. Acceptance of late reports will not remedy any insurance deficiency which results from your failure to report on time. The Company may examine your records. Knowledge acquired through such examination is not a substitute for the reports you are required to file.

From the record, it appears that on January 19, 1976, Mountain View completed a December 1975 monthly report showing inventory in the amount of $350,000. This report was received by appellee after the January 21, 1976, fire. Thus, under the express terms of the value reporting clause found in the insurance policy, this monthly report was not utilized for purposes of determining coverage at the time of the loss.

7. This case also must be remanded to the superior court to resolve the remaining factual issues, including the question of the effect of the purported termination of Alexander & Alexan-

We have reached this conclusion based on our assessment of the January 15, 1976, telephone conversation between Chris Goll and Alfred Opp and our further conclusion that Opp, acting as the purported agent of Commercial Union, waived the reporting requirement in the insurance policy.

By Opp's own admission, it is established that he represented to Goll that Mountain View Sports Center was "covered" as of January 15th by the additional $100,000 of insurance which Goll had requested. Opp led Goll to believe that there was nothing further that he needed to do in order to assure that "coverage is bound." Thus, we think it is established on the undisputed record in this case that the telephone conversation of January 15, 1976, included both a report on Mountain View's increased inventory values and a request to increase the insurance policy limit on coverage to $350,000, and further that Opp did, in fact, agree to provide the requested coverage. The only question which remains for us to decide is whether, as a matter of law, Opp's actions constituted a waiver of the written inventory reporting requirement in the insurance policy.[8]

A number of courts have held that the doctrines of waiver and estoppel[9] should not be applied to the monthly reporting clause of inventory value-reporting insurance policies similar to the one at issue in the present case.[10] The rationale of those cases seems to be that value-reporting clauses, with their attendant limitations on liability based on the last inventory value reported prior to the loss, are provisions going to the coverage or scope of the insurance policy. It is a general rule of insurance law that "[t]he doctrine of waiver . . . does not pertain to matters of coverage so as to extend the scope of the contract beyond its express terms through the acts of an agent not authorized or approved by the company."[11] The courts adhering to this view reason that if an agent of the insurance company could by his own actions waive the requirement of filing

---

der's agency agreement by Commercial Union prior to Opp's January 15th telephone conversation with Goll. *See* note 5 *supra.*

**8.** If the acts of Opp were within the scope of his actual, or apparent, authority as an agent for Commercial Union, then the latter would be bound by its agent's acts. *See Baker & Co. v. Preferred Risk Mut. Ins. Co.,* 569 F.2d 1347 (5th Cir. 1978); *Smith Trucking, Inc. v. Cotton Belt Ins. Co.,* 556 F.2d 1297 (5th Cir. 1977); *Brown v. Inter-Ocean Ins. Co.,* 438 F.Supp. 951 (N.D. Ga.1977).

**9.** The doctrines of waiver and estoppel were recently explained in detail in *Milne v. Anderson,* 576 P.2d 109, 112 (Alaska 1978):

Waiver is generally defined as 'the intentional relinquishment of a known right.' However, waiver is:

'a flexible word, with no definite, and rigid meaning in the law . . . .. While the term has various meanings dependent upon the context, it is, nevertheless, capable of taking on a very definite meaning from the context in which it appears, and each case must be decided on the facts peculiar to it.'

*United States v. Chichester,* 312 F.2d 275, 281–82 (9th Cir. 1963) . . . .. A waiver can be accomplished either expressly or implicitly. An implied waiver arises where the course of conduct pursued evidences an intention to waive a right, or is inconsistent with any other intention than a waiver, or where neglect to insist upon the right results in prejudice to another party. To prove an implied waiver of a legal right, there must be direct, unequivocal conduct indicating a purpose to abandon or waive the legal right, or acts amounting to an estoppel by the party whose conduct is to be construed as a waiver. [Further citations and a footnote omitted]

The uncontested facts of this case establish that Opp's conduct in affirming the increased coverage requested by Goll constituted a waiver of the terms of the insurance policy, assuming that such a waiver could be had.

**10.** *See Commonwealth Ins. Co. v. O. Henry Tent & Awning Co.,* 287 F.2d 316 (7th Cir.), *cert. denied,* 368 U.S. 826, 82 S.Ct. 45, 7 L.Ed.2d 30 (1961); *Peters v. Great Am. Ins. Co.,* 177 F.2d 773 (4th Cir. 1949); *Six L's Packing Co. v. Florida Farm Bur. Mut. Ins. Co.,* 268 So.2d 560 (Fla.App.1972); *Finger v. St. Paul Fire & Marine Ins. Co.,* 423 S.W.2d 460 (Tex. App.1968); Annot., 1 A.L.R.3d 1139 (1965 and Supp.1978). *See generally Inland Mut. Ins. Co. v. Hightower,* 274 Ala. 52, 145 So.2d 422 (1962); *Washington Nat'l Ins. Co. v. Craddock,* 109 S.W.2d 165 (Tex.App.1937); *Summers v. Oakfield Town Mut. Fire Ins. Co.,* 245 Wis. 40, 13 N.W.2d 518 (1944).

**11.** *Peters v. Great Am. Ins. Co.,* 177 F.2d 773, 778 (4th Cir. 1949).

monthly inventory value reports with the insurance company, such that the insured is protected by the maximum coverage of the policy regardless of his noncompliance with the reporting clause, a new primary liability might be created, bringing within the coverage of the policy risks not included or contemplated by its terms.

The broad exemption of insurance policy provisions concerning coverage from the doctrines of estoppel and waiver has been criticized as unreasonable.[12] Moreover, we have previously expressed our reluctance to adopt a per se rule that there can never be a waiver of monthly reporting and related provisions of an insurance policy.[13] Most of the courts which have taken this position have dealt with factual situations in which a waiver is alleged based on the acceptance of delinquent reports on a regular basis by the insurance company without termination of the policy. In this situation in *Alaska Foods, Inc. v. American Manufacturer's Mutual Insurance Co.*, 482 P.2d 842 (Alaska 1971), we held that an insurance company's act of requesting and accepting delinquent monthly reports alone does not evidence such an "intentional relinquishment of a known right or privilege" as to waive its right to determine its liability with reference to the last written inventory report filed.

If we held that acceptance of late value reports waives the value reporting provisions of the policy and reinstates full coverage up to the policy limits, we would be creating an entirely new contract for the parties. The flexible nature of the policy indicates that the parties intended that late value reports could be filed as often as desired by the insured, and that the result of this would not be full coverage up to the policy limits, but coverage limited to the amount stated on the last, although tardy, value report filed.[14]

The decision as to the waiver of insurance policy provisions in the last analysis rests upon sound equitable considerations. In reaching our conclusion that a waiver was effectuated by the acts of Alfred Opp, we are cognizant that the factual circumstances giving rise to this action are sympathetic to the insured's point of view. According to an affidavit which was filed by Goll, the Mountain View Sports Center originally obtained a fire insurance policy through Opp, an employee of Alexander & Alexander. Goll averred that all dealings concerning Mountain View's fire insurance policy were conducted with Alfred Opp and Alex-

---

12. R. Keeton, *Insurance Law Rights at Variance With Policy Provisions*: *Part Two*, 83 Harv.L.Rev. 1281, 1317–22 (1970). Professor Keeton notes:

> Doctrines based on genuine waiver and estoppel are intended to protect against agents' misleading oral representations, just as statutes concerning warranties protect against draftsmen's misleading policy clauses. To accomplish this, their application should not depend merely on the nature of the policy provision that a representation contradicts. Misleading oral representations are no less possible in relation to provisions of central importance than in relation to less significant provisions.
>
> Moreover, there is reason to think that the doctrine of immunity from waiver and estoppel has proved unnecessary to its apparent intended function and that the rule that coverage provisions are not subject to variance is a less reliable basis for prediction, even in jurisdictions whose courts persistently state the rule, than is a set of rigorously applied rules of waiver, estoppel, election, reformation, and breach.

*Id.* at 1321. Keeton concludes: "It seems, then, that even coverage provisions should be subject to carefully limited application of waiver and estoppel, as well as other doctrines such as election, reformation, and recission." *Id.* at 1322.

13. In *Alaska Foods, Inc. v. American Manufacturer's Mut. Ins. Co.*, 482 P.2d 842, 851 (Alaska 1971), we declined to adopt an absolute rule on this point. We stated:

> Failure to comply with the monthly reporting condition through tardy filing results not in a forfeiture of the policy, but in a limitation on the coverage of the policy determined by the last report filed. However, we need not decide the broad question of whether there can ever be a waiver of an insurance provision going to coverage because, in our opinion, mere request for an acceptance of late monthly value reports would not constitute such a waiver under the terms of the provisional insurance policies in this case. [footnote omitted]

14. *Id.* at 852.

ander & Alexander, and that all inventory valuation forms were supplied by Opp and Alexander & Alexander and subsequently returned to them by Mountain View. Of particular significance is the following portion of Goll's affidavit:

That Chris Goll on January 15, 1976, demanded increased coverage for Mountain View Sports Center's inventory of $100,000, which Chris Goll reported to Alfred P. Opp, was approximately $350,-000, as valued by a year end inventory, such coverage was believed by Chris Goll to have been accepted by Alfred P. Opp on behalf of Alexander & Alexander, Inc. and Commercial Union Assurance Company.

. . . . .

That after January 15, 1976, Chris Goll sought no further insurance coverage for the Mountain View Sports Center inventory which exceeded insurance coverage by $100,000, it being approximately $350,-000, since he believed from Al Opp's representations, 'I'll take care of it, Chris,' that Mountain View Sports Center's insurance coverage through Commercial Union Assurance Company had been extended to $350,000 and all conditions of coverage met.

In addition to the foregoing, in his supplemental affidavit, Goll further asserted that in his January 15, 1976, conversation with Opp, which we quoted above, Opp gave Goll assurances that the increased coverage was confirmed. Finally, Opp's memorandum the day after this conversation also stated that the coverage was bound.

Two federal cases lend support to our decision that the agent's actions in this case constituted a waiver of the reporting requirement. In *American Eagle Fire Insur-* *ance Co. v. Burdine*, 200 F.2d 26 (10th Cir. 1952), a suit upon an insurance policy similar in terms and conditions to the one before us, the court of appeals held that a similar oral report to the insurance agent of the amount of inventory on hand constituted the last monthly report of values under the policy prior to the loss. In so holding, the court relied, in part, on the trial court's findings that the agent of the insurer had "both implied and apparent power to assist in the preparation of monthly reports of values by insurance customers with monthly report form policies."[15] The agent was apparently authorized to receive the reports and hold them in his office or transmit them to the insurance company's home office as he saw fit.[16]

The second case, *Columbia Fire Insurance Co. v. Boykin & Taylor*, 185 F.2d 771 (4th Cir. 1950), involved a similar issue. In that case the question was whether the liability of the insurance company was to be determined by the last value report prepared by the agent from information obtained from the insured and actually received by the company before the loss, or by the last report prepared by the agent using information supplied by the insured but not transmitted to the company until after the fire. The agent apparently routinely attended to all the details of the policy, including the obtaining of information respecting the insured's monthly inventories. The inquiries by the agent, in person or by telephone, were understood by the insured to comprise the only reports or method of reporting required by the insurance policy. In those circumstances, the court held that the company was equitably estopped to plead the reporting requirements as a defense to the insured's suit.[17]

---

**15.** *American Eagle Fire Ins. Co. v. Burdine*, 200 F.2d 26, 29 (10th Cir. 1952).

**16.** The court further observed that oral reports to the agent were the only kind of report the insured had ever made to the company and "he had a right to rely upon the course of conduct which led him to believe that such reporting was in compliance with his policy requirements." *Id.* at 30.

**17.** Other cases finding a waiver of inventory reporting conditions include *Hanover Ins. Co. v. McLoney*, 205 F.Supp. 49 (E.D.Ky.1962); *California Ins. Co. v. Bishop*, 228 S.W. 1010 (Tex.Civ.App.1920). *See* 15 R. Anderson, Couch on Insurance § 54.92, at 373–74 (2d ed. 1966 and Supp.1978). For additional case authority holding that waiver and estoppel doctrines do apply to policy provisions going to

Though a continuing practice of making oral reports to the agent of the insurance company was of note in both the *American Eagle* and *Columbia* cases, we are not persuaded that the present case should be distinguished on the ground that the oral report was not a routine occurrence at the time of the January 15, 1976, telephone conversation which is critical to this case. Both of the federal cases discussed additionally emphasized the insured's reliance on the agent's assistance in securing and maintaining adequate insurance coverage and the active role of the agent in the collection and transmittal of the monthly inventory value report forms to the insurance company.[18] These factors all were present in this case, and we think they gave rise to a reasonable expectation on behalf of Mountain View Sports Center and Chris Goll that appellant could in good faith rely on the representations and assurance of coverage made by the insurer's agent, Alfred Opp.

The judgment of the superior court is therefore Reversed, and the case is Remanded with directions to enter summary judgment in favor of appellant Mountain View Sports Center against Opp and Alexander & Alexander, and to determine remaining issues as to the claim against Commercial Union.[19]

coverage, see generally *Harr v. Allstate Ins. Co.*, 54 N.J. 287, 255 A.2d 208 (1969); *Barth v. State Farm Fire & Cas. Co.*, 214 Pa.Super. 434, 257 A.2d 671 (1970); *State Auto Cas. Underwriters v. Ruotsalainen*, 81 S.D. 472, 136 N.W.2d 884 (1965); Annot., 1 A.L.R.3d 1139, 1150 (1965 and Supp.1978).

18. This involvement of the brokerage agent in the monthly inventory reporting procedure is in contrast to the cases where either the insured is responsible for a deliberate understatement of actual inventory on hand which the agent has no part in, or the insured deals directly with the insurance company with respect to the reports, filling them out and personally mailing them to the company with no assistance or

intervention by the agent. *See, e. g., Peters v. Great Am. Ins. Co.*, 177 F.2d 773 (4th Cir. 1949).

19. On remand, Commercial Union Assurance Company's contention that it had terminated Alexander & Alexander's agency prior to Goll's January 15th conversation with Opp remains to be litigated. *See* note 5 *supra.* Our disposition of the case has also made it unnecessary for us to address Mountain View's attorney's fee claim discussed at 6 and note 4 *supra.* The superior court is directed to enter an award of attorney's fees in an appropriate amount in favor of appellant Mountain View Sports Center against Opp and Alexander & Alexander.