Progress Laundry Company, Appellant, v. Walter H. Schweik and Schweik Insurance Agency, Inc., Appellees.

Gen. No. 44,099.

Opinion filed November 3, 1947. Released for publication November 18, 1947.

ROBERT J. MILLMAN, of Chicago, for appellant; ABRAHAM MILLER, of Chicago, of counsel.

EKERN, MEYERS & MATTHIAS, of Chicago, for appellees; DONALD L. THOMPSON and WILLIAM G. CHORN, both of Chicago, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action against defendants to recover $3,133.61, claimed to be due for failure of defendants to see that proper insurance was written covering plaintiff's property. Defendants denied liability. The case was tried before the court without a jury, there was a finding and judgment in defendants' favor and plaintiff appeals.

The theory of plaintiff is that it was conducting a laundry in Chicago and employed defendants as insurance brokers to procure policies covering plaintiff's property; that defendants failed to do this, as a result

of which plaintiff sustained a loss for which it sues. On the other hand, defendants' position is that Walter H. Schweik, individually, was in no way personally involved; that he was not a broker but was acting as the agent of Schweik Agency, Inc., which was a licensed broker; that the two policies issued by Lloyds of which plaintiff complains were valid and enforceable and that plaintiff had no right as against defendants to give Lloyds a covenant not to sue for less than their proportionate share as fixed by the insurance adjusters.

The record discloses that defendants procured two Lloyds fire insurance policies, one issued May 13, 1942, for $12,500 and one issued June 2, 1942, for $2,500. Each of these policies covered plaintiff's property for a period of one year. That when these two policies were issued, plaintiff had another policy covering the property for $3,000 issued December 30, 1941, by the Law Union & Rock Insurance Co., which expired by its terms December 30, 1942 and on the day it expired defendants secured another policy for $3,000 from the Yorkshire Insurance Company which covered the property for a period of one year. That on March 18, 1943, plaintiff had eight policies aggregating insurance coverage of $30,000 and on that day there was a fire which caused damage to the insured property of $25,068.33, as fixed by adjusters who also fixed the pro rata share covered by each of the eight policies. In the adjustment Lloyds' pro rata share of the $12,500 policy was $10,445.13 and on the $2,500 policy, $2,089.03, making a total of $12,534.16. That Lloyds contended that the two policies issued by them were unenforceable because each of them contained a warranty clause which required plaintiff at the time of loss to carry at least $3,000 insurance in the Law Union & Rock Insurance Co. which policy was in effect when the Lloyds policies were issued but expired December 30, 1942, and defendants procured a policy

from the Yorkshire Insurance Co. on the same day for $3,000 on plaintiff's property for a period of one year.

The evidence further shows that about March 1, 1943, the Law Union & Rock Ins. Co. issued its policy for $2,500, covering plaintiff's property but this policy was not obtained by defendants. The insurance adjusters fixed the pro rata share under this policy at $2,089.03, and the pro rata share under the Yorkshire policy at $2,506.83. These two sums, as well as all other pro rata shares on all of the policies except Lloyds, were paid in full, but Lloyds refused to pay their pro rata share under the two policies issued by them. However they agreed and did pay plaintiff $9,400.55, which was $3,133.61 less than its pro rata share. When plaintiff received Lloyds offer to pay the $9,400.55 it advised defendants of this fact and offered to assign its claim against the Lloyds to defendants if defendants would pay plaintiff the $12,534.16, or if defendants preferred to have plaintiff bring suit against Lloyds, that defendants furnish plaintiff a surety bond to secure plaintiff against an adverse result in the suit against Lloyds. Defendants refused both of these offers and thereupon plaintiff accepted $9,400.55 from Lloyds and on May 27, 1943, gave to Lloyds its covenants not to sue and Lloyds paid the $9,400.55. The issuance of the two policies is recited in this document, the pro rata share of Lloyds of the loss is stated, and further, that: "A certain question and dispute has arisen" between plaintiff and Lloyds by reason of the fact that at the time of the loss, the property was not covered by a policy of the Law Union & Rock Ins. Co. for $3,000, as required by the two Lloyd policies, but that a policy issued by Law Union & Rock Co. for $2,500 was in force before and at the time of the loss.

The court at the conclusion of the trial rendered an oral opinion in which he said: "If the insurance [the two Lloyds policies] was entirely void, there would be

no question as to the right to recover from the insurance agency.

"In the present case, however, the only defense which the Lloyds organization has was that there had been a substitution of policies, namely, the Yorkshire insurance for the Law Union & Rock Company.

"If action had been instituted as against the Lloyds group on the policies and the Lloyds group had sought to defend on the ground of such substitution as a violation of the provision of the policy, that would have been met by the provisions of the Illinois law, Chapter 73, Section 766, which would preclude making that promissory warranty a defense, where the matter involved was not material to the risk.

"The breach in the instant case could not have affected the risk, because the same sort of company was kept as an insurer, and the Law Union & Rock Company was actually kept to the extent of $2,500 instead of $3,000.

"The purpose of the Lloyds policy provision was to protect the Lloyds Company, because they had no local agent and could not watch the local situation.

"By compromising with the Lloyds group and giving that company a covenant not to sue, they put the defendant broker in a position where he could not protect himself or recoup.

"Therefore, for those reasons, it is my opinion that the plaintiff in this case should not prevail."

Plaintiff's contention is that under the warranty clause in each of the two Lloyds policies, "The substitution by the defendants of the Yorkshire policy for the Law Union policy rendered the Lloyds policies void or materially defective," and that Sec. 154 (Par. 766, ch. 73 of the Ill. Rev. Stats. 1945 [Jones Ill. Stats. Ann. 66.829]) is not applicable. The warranty clause in each of the Lloyds policies is as follows: "Warranted same terms and conditions as and to follow the settlements of the policy or policies of the Law Union

and Rock Insurance Company and that said Company has at the time of any loss, and at the same gross rate, at least $3,000 (subject only to reduction by amount of any loss and reinstated) on the identical subject matter and risk, and identically the same proportion on each separate part thereof."

A great deal is said in the briefs by counsel for each party, concerning this warranty clause, as to whether it is in the nature of a condition subsequent or a condition precedent, and counsel indulge in puzzling refinements and metaphysical discussions, all of which tend but to confuse and apparently lose sight of the practical situation which is the administration of justice between the parties. These arguments are wholly unnecessary and unwarranted. The warranty clause is clear in this respect. It says that, "At the time of any loss," there must be in effect, a policy for at least $3,000 issued by the Law Union & Rock Ins. Co. It is admitted that at the time of the loss there was a policy covering the property issued by the Law Union & Rock Co. for $2,500, while under the warranty it should have been $3,000. And the undisputed evidence is, and there is no contention to the contrary, that at the time of the loss there was a $3,000 policy issued and in effect, of the Yorkshire Insurance Co.

On the hearing "It was stipulated between the parties that at the expiration of the Law Union & Rock Insurance Policy on December 30, 1942, another policy was obtained from the Yorkshire Insurance Company that was to run from December 30, 1942 to December 30, 1943. That the Yorkshire policy was on the same terms, conditions and rate as the Law Union & Rock policy and on a standard form, on the identical subject matter and in the same proportions." And it is further undisputed that the Law Union & Rock and the Yorkshire companies each paid its pro rata share of the loss and that all of the other companies except Lloyds did likewise.

Plaintiff's rights, however, were not properly protected on account of the negligence of defendant, Schweik Insurance Agency, Inc., for the reason that Lloyds took advantage of the fact that at the time of the loss there was not at least $3,000 insurance covered by a policy of the Law Union & Rock Co. and we are constrained to hold that under the law, Lloyds could take advantage of this. *The Evan L. Reed Mfg. Co. v. Wurtz,* 187 Ill. App. 378; *Federal Intermediate Credit Bank v. Globe & Rutgers Fire Ins. Co.,* 7 Fed. Supp. 56. We are further of opinion that section 154, par. 766, chapter 73, Ill. Rev. Stats. 1945, is in no way applicable to the case before us. There was no misrepresentation made by defendant nor anyone else. The only matter involved was the failure of defendant agency to take out a policy for $3,000 in the Law Union & Rock Co. when the policy, which was on the property at the time the two Lloyds policies were issued, had expired. This was required to be done by the warranty, above quoted. The defendant agency having failed to procure the proper insurance policy covering plaintiff's property renders it liable to plaintiff for the loss it sustained. *Shapiro v. Amalgamated Trust & Savings Bank,* 283 Ill. App. 243; *Israelson v. Williams,* 166 App. Div. 25, 151 N. Y. S. 679.

In the *Shapiro* case it was held that in an action against an agent who failed to follow instructions in procuring a fire insurance policy defendant could not avoid liability on account of the alleged failure of plaintiff to read the policy and to ascertain whether the defendant agent had faithfully performed the duty for which it was employed. In that case plaintiff, Shapiro, sued the bank which was plaintiff's agent to secure insurance on plaintiff's property and failed to properly do so. There was a judgment in plaintiff's favor which was affirmed by this court. Mr. Presiding Justice McSurely, in delivering the opinion of the court said: ''Cases involving the liability of an insurance company which directly issues a policy to the

insured are not in point. This is a case where plaintiffs are asking damages from their agent who failed to follow their instructions. The facts are very similar to those involved in *Reed Mfg. Co. v. Wurtz,* 187 Ill. App. 378. In that case plaintiffs instructed the defendant to secure certain fire insurance; defendant failed to follow instructions, with an ensuing loss to plaintiffs who sued defendant to recover damages. The court said:

" 'The principles of law generally applicable to actions of the character here involved are not seriously controverted by the defendant.

" 'If an agent neglects to procure insurance or does not follow instructions when obligated so to do, or if the policy obtained is void or materially defective through the agent's fault, or if the principal suffers damage by reason of any mistake or act of omission or commission of the agent which constitutes a breach of duty to his principal, he is liable to his principal for any loss he may have sustained thereby. [Citing authorities.]

" 'In *Israelson v. Williams* [166 App. Div. 25], 151 N. Y. S. 679, the difference between the rule applicable in an action between the insured and an insurer and an action brought by an insured against his own agent is stated. . . . In the instant case the defendant was the agent of the plaintiffs in procuring the insurance policy and it cannot avoid liability because of an alleged failure on the part of plaintiffs to ascertain whether the agent has faithfully performed the duty for which it was employed.' "

In the *Israelson* case suit was brought by the owner of property against an insurance broker for failure to properly insure plaintiff's property. Plaintiff had a judgment which was affirmed on appeal. The court there said: "The theory of the plaintiff's action is to recover damages for a breach of duty on the part of the defendant. The defendant was an insurance broker. The plaintiff's assignor, Wilson, owned a house"

on Long Island. "Wilson made application to Williams to negotiate a policy of fire insurance" on the property and instructed him that there was already insurance on the property. Williams procured a policy and delivered it to Wilson but the policy contained a clause that it should be void if there was any other insurance on the property at the time. Wilson claimed he did not know of this clause until after the fire took place and his house was destroyed. Wilson brought suit on the policy against the insurance company and after some delay his attorneys received $250 from the company and the action was discontinued. The court there further said (p. 681): "It appeared that Williams was not the agent of the Concordia Company; that the Concordia Company had resisted liability; that the money paid for a discontinuance was not paid in recognition of any liability and no release was taken, but was paid to 'buy peace,' and, as the Concordia Company's counsel termed it on the witness stand, as 'Blood money,' . . . . The court allowed a reduction of plaintiff's claim to the extent of the $250 received from the Concordia Company." Defendant contended (1) that Wilson should have examined the policy when Williams gave it to him and that his failure to do so was negligence per se, and exonerated Williams, his agent. (2) That Wilson having kept the policy without complaining of it or objection, waived his rights against defendant. The court said: "The appellant cites many cases where, in actions between the insured and the insurer, it was held that an acceptance of an insurance policy by the insured, without mutual mistake or fraud, bound the insured. Doubtless this contention is correct, if applicable to the case at bar. Here, however, the action is not between the insured and the insurer, but between the insured and his own agent for a breach of duty to fulfill instructions. The respondent cites a number of authorities to the effect that Wilson had the right to rely upon a presumed obedience to his instruc-

tions on the part of his skilled agent, and was not negligent in taking steps to investigate the matter. We think the respondent is right on this point. Nor, as we think, do the facts show any waiver on the part of Wilson, for a claim of waiver must rest upon knowledge on the part of the person said to have waived, and that element is absent here.

"As to the weight of evidence, it is plain that the trial court gave great care to this case. The transaction between Wilson and the Concordia Company did not inure to the benefit of Williams. He was not the agent of that company, but Wilson's agent. The money was not paid in recognition of any liability."

■ In the instant case defendant contends that plaintiff "by compromising with the Lloyds group and giving the company a covenant not to sue, they put the defendant broker in a position where he could not protect himself or recoup." We think this contention, under the law as clearly stated by the Appellate Division of the New York court as announced in the above quotation, cannot be sustained. Defendants were notified of the facts but refused to assume any liability. Plaintiff did not settle its claim against Lloyds but executed a covenant not to sue.

Defendant, Walter H. Schweik, was not plaintiff's agent. He was not a licensed broker and is in no way liable. The defendant agency corporation was the licensed broker and agent of the plaintiff, and is liable.

For the reasons stated, the judgment of the circuit court of Cook county as to defendant, Walter H. Schweik, is affirmed and as to the defendant, Schweik Insurance Agency, Inc., a corporation, is reversed and the cause remanded, with directions to enter judgment in favor of plaintiff and against defendant in accordance with what is said in this opinion.

*Judgment affirmed in part, reversed in part and remanded with directions.*

NIEMEYER, P. J., and FEINBERG, J., concur.