430 P.2d 658

**E. S. HARPER CO., Inc., an Idaho Corporation, Plaintiff-Appellant,**

v.

**GENERAL INSURANCE COMPANY OF AMERICA, a Foreign Corporation, and, Tandy and Wood, Inc., an Idaho Corporation, Defendants-Respondents.**

No. 9850.

Supreme Court of Idaho.

July 18, 1967.

Stephan & Harvey and Balleisen & Galley, Twin Falls, for appellant.

Parry, Robertson & Daly, Twin Falls, Albaugh, Bloem, Smith & Pike, Idaho Falls, for respondents.

SMITH, Justice.

Appellant (hereinafter sometimes referred to as Harper), brought this action seeking to recover the balance of a fire loss, the inventory of which was allegedly not covered by a provisional reporting form of fire insurance policy, due to the alleged negligence of respondents.

Respondent, General Insurance Company of America (hereinafter sometimes referred to as General), issued the policy through Tandy and Wood, Inc. (hereinafter sometimes referred to as the Agent), the agent for General and other insurers.

December 18, 1962, during the policy period, appellant suffered extensive losses of stock and equipment in a fire at Harper's warehouse in Twin Falls. General conceded liability under the policy of $4,219.35, a sum considerably less than the amount of the loss. Harper commenced this action against respondents for recovery of the value of personal property destroyed by the fire and not fully compensated by the amount of General's conceded liability under the policy.

Respondents moved for a summary judgment in favor of appellant and against General in the amount of $4,219.35; also for a summary judgment in favor of the Agent. The district court granted the motions and entered summary judgments accordingly. Appellant Harper has appealed.

This court has not previously considered the provisional reporting form insurance policy, sometimes referred to as provisional insurance. The discussions contained in certain cases are informative as to the purpose and mechanics of this form of coverage. See Commonwealth Ins. Co. of New York v. O. Henry Tent & Awn. Co., 287 F.2d 316 (7th Cir. 1961); American Eagle Fire Ins. Co. v. Burdine, 200 F.2d 26 (10th Cir. 1952); Columbia Fire Ins. Co. v. Boykin & Tayloe, 185 F.2d 771 (4th Cir. 1950); Anderson Feed & Produce Company v. Moore, 66 Wash.2d 237, 401 P.2d 964 (1965); Albert v. Home Fire and Marine Ins. Co. of California, 275 Wis. 280, 81 N.W.2d 549 (1957); 5 Couch, Insurance § 30:18 (2d ed. 1962); cases collected in Annot. 13 A.L.R.2d 713 (1950).

The provisional reporting form insurance policy which the Agent obtained for Harper provided flexible premium rates and coverage, which varied according to the amount of equipment and stock which the insured actually held and reported as inventory. Certain policy provisions, set forth in the margins, guaranteed Harper coverage of all stock and equipment reported as inventory and premium rates directly proportional to the amount of property actually insured. Paragraph 9 of the

policy, the value reporting clause,[1] directed the insured, Harper, to submit to General monthly reports of the location and actual cash value of property which the insured held, and the amount of specific insurance applicable to that property. Paragraph 11, the premium adjustment clause,[2] provided that Harper's insurance premiums should be calculated annually according to the average of the monthly values reported. Paragraph 10, the full reporting clause,[3]

governed General's liability in the event of loss, and provides in effect that liability under the policy shall not in any case exceed that proportion of any loss which the last reported value, less the amount of specific insurance reported, bears to the actual value less the amount of specific insurance at the time of the report.

Whether the insured obtains total coverage under the terms of this type of policy

1. "9. Value Reporting Clause: (a) It is a condition of this policy that the insured shall report in writing to this company on the last day of each calendar month of the policy term, the exact location of all property covered hereunder, the total actual cash value of such property at each location and the amount of creditable specific insurance in force at each location, all as of the last day of that month. However, a grace period of thirty (30) days shall be allowed for compilation and submission of such reports to this company. (b) If at the time of any loss, the insured has failed to file with this company, reports of values as above required, this policy, subject otherwise to all its terms and conditions, shall cover only at the locations and for not more than the amounts included in the last report of values less the amount of creditable specific insurance reported, if any, filed prior to the loss. (c) If such delinquent report is the first report of values herein required to be filed, this policy shall cover only at the respective locations to be filed, this policy shall cover only at the respective locations specifically named herein and for not exceeding 75% of the applicable limit of liability of this company specified in the limit of liability clause."

2. "11. Premium Adjustment Clause: The premium named in this policy is provisional only, the actual premium consideration for the liability assumed hereunder shall be determined, at the expiration of this policy, by application of the following formula:
After deducting the amount of creditable specific insurance, if any, (not exceeding, however, the amount of value reported) at each location, an average of the total remaining values reported at each location shall be made, and if the premium of such average values at the rate applying at each location herein provided (in the case of locations acquired, the rate used shall be the rate that is applicable to each such location at the

time the location was first reported), exceeds the provisional premium, the insured shall pay to the insurer an additional premium for such excess; and, if such premium is less than the provisional premium, the insurer shall refund to the insured any excess paid. If this policy is written for a term of more than one year, an annual adjustment of the earned premium shall be made as of each anniversary date based on the values reported by the insured during the preceding twelve months applied to a pro rata of the term provisional deposit premium.
It is a further condition of this policy, anything to the contrary notwithstanding, that the final adjusted premium as provided in this clause shall in no event be less than this policy's proportion of $200.00 per annum."

3. "10. Full Reporting Clause: Liability under the policy shall not in any case exceed that proportion of any loss hereunder (meaning the loss at the location involved after deducting the liability of specific insurance, if any) which the last value reported to this company prior to the loss, less the amount of creditable specific insurance reported, if any, at the location where the loss occurs, bears to the total actual cash value of the property hereinbefore described, less the amount of creditable specific insurance, if any, actually in force at that location at the time of such report. Liability for loss hereunder occurring at any new location where, since filing the last report, the insured may have property as hereinbefore described (except as provided in value reporting clause) shall be apportioned in a like manner, except that the proportion used shall be the relation that the values at all locations reported prior to the loss, less the amount of reported creditable specific insurance, if any, bear to the total actual cash value of the property hereinbefore described at all locations, less the amount of creditable specific insurance, if any, actually in force at the time of such report."

depends upon the insured's monthly reports of actual values. Understatement of the value of inventory results in proportionately less coverage and payment of proportionately smaller premium. The insurer, assuming notice that the insured has undervalued or omitted to include some portion of inventory, may infer that the insured desires to limit its insurance to the amount shown by the insured's latest monthly report.

In the instant case, Harper departed from the conventional practice of submitting monthly reports directly to the insurer. Harper, and the Agent, through its vice-president Ervin Hill, collaborated from the inception of the policy in 1947 in the preparation and submission of reports to General. Under the practice pursued Harper mailed monthly statements of inventory and specific insurance to Hill at the Agent's office, and Hill accepted Harper's inventory statement, made necessary corrections in the specific insurance figures, transferred the figures to General's monthly reporting forms, and mailed the reports to the insurer. General consistently accepted those forms without protest or inquiry.

Harper's monthly statement to Hill prior to the fire, understated the value of inventory located in Harper's Twin Falls warehouse. The statement submitted shortly before the loss[4] valued all equipment in that warehouse at $49,430.18. The actual value of that equipment, however, when the fire occurred eighteen days later, as compiled in inventories prepared for the insurance adjustor, was $53,169.75 for major equipment and $23,780.44 for other personal property (miscellaneous equipment), or an aggregate of $76,950.19. Accepting Harper's statement of value and applying the liability formula stated in

paragraph 10, General determined, and conceded, its liability under the policy to be $4,219.35, the amount of the summary judgment against it entered by the district court.

Harper fundamentally challenges the correctness of the summary judgment on the ground that the Agent and General were responsible for Harper's systematic undervaluation of the Twin Falls properties, and are consequently liable for the amount of actual loss not covered under the terms of Harper's policy.

Harper's first contention rests upon the fact that the Agent regularly submitted to General the formal monthly reports, based upon Harper's inventory statements, and that General accepted the reports over an extended period of time without protest.

Appellant urges the rule that where the insurer has notice that the agent has undertaken the insured's primary duty of submitting timely monthly reports, and where the insurer declines to protest or object to its agent's conduct, the insurer cannot interpose as a defense the failure to submit reports, at the times fixed by the policy, prior to the loss. American Eagle Fire Insurance Co. v. Burdine, supra; Columbia Fire Insurance Co. v. Boykin & Tayloe, supra. In the cited cases, the insurer ordinarily received reports of inventory from the agent, and when the agent failed to transmit the reports each month as required by the policy, the insurer was held estopped to assert against the insured the agent's neglect in complying with the obligation of periodic reporting.

The rule of those cases obviously does not control the present case, where the failure of the policy to cover Harper's loss fully arose through no infirmity in the procedures for monthly reporting. The Agent diligently transferred the figures

4. Harper's December 3, 1962, statement of values and specific insurance to Tandy & Wood reads as follows:
    "Gentlemen: Following is our stock and equipment value for the Twin Falls * * * locations for the month ending November 30, 1962:
    "Twin Falls Whse Equipment                                     $49,430.18
    less $11,899.00 [specific insurance]—$37,531.18
                                          * * *
    "Twin Falls Whse Floor Stock—                                  $ 1,500.00."

received from Harper to the reporting forms and—unlike the agents in the aforementioned cases—transmitted the forms promptly to General, the insurer. Harper's reliance upon the alleged irregular procedure of reporting in no way affected the extent and amount of Harper's coverage as reported by him, and therefore does not relate to the Agent's or General's asserted liability.

Harper next contends that the Agent neglected to exercise reasonable skill and ordinary diligence in the effectuation of Harper's policy, and that such negligence proximately resulted in the failure of Harper's insurance to cover the amount of actual loss. As hereinbefore shown, the insufficient coverage at Harper's Twin Falls warehouse was directly attributable to Harper's undervaluation of the stock, equipment and other personalty at that location. The question presented is therefore limited to whether the Agent assumed any duty to list the inventory at Harper's Twin Falls warehouse and to ensure that the inventory of that stock, equipment and other personalty, correctly listed and valued, was reported to General.

Express provisions controlling the rights of the parties and the duties of General and its agents to Harper, the insured, appear in the insurance policy itself, which constitutes a binding, integrated contract of the parties. March v. Snake River Mutual Fire Insurance Company, 89 Idaho 275, 404 P.2d 614 (1965). The clear and unambiguous terms of the policy instructed "the *insured* [to] report in writing to this company * * * the total actual cash value of * * * property at each location." (Emphasis supplied.) By that condition the insured Harper reasonably assumed the obligation to account for the valuation of its own property, thus excusing the insurer and its agents from any duty in that respect. Peters v. Great American Ins. Co., 177 F.2d 773, 777, (4th Cir. 1949); Camilla Feed Mills v. St. Paul Fire & Marine Insurance Co., 177 F.2d 746, 748–749, 13 A.L.R.2d 705 (5th Cir.

1949); Hanover Insurance Co. v. McLoney, 205 F.Supp. 49, 52 (E.D.Ky.1962).

Harper observes that the Agent departed from its capacity as General's agent in acting on behalf of Harper in procuring the provisional form insurance policy and in transmitting monthly reports to the insurer. There is, of course, no legal barrier to the Agent's acting in that limited manner as agent for the insured, since no conflicts of interest or inconsistency of duties were present. American Eagle Fire Ins. Co. v. Burdine, 200 F.2d at 30; 3 Couch, Insurance § 25:40 (2d ed. 1962). Harper does not dispute the Agent's due care in procuring the provisional form policy and in submitting the monthly reports timely to the insurer, but contends that the Agent's duty to Harper extended further and required the Agent to accept responsibility for accurate and complete inventory valuation.

Obviously, the Agent assumed only limited duties in acting as Harper's agent. The relationship created was based upon the parties' mutual manifestations of consent, that the Agent should act in certain respects on Harper's behalf, and that the Agent's duties existed only by virtue of that understanding with Harper. Where the principal sues the agent in tort upon the theory that the agent has negligently dealt with affairs entrusted to him by the principal, the question whether the agent has improperly performed depends upon his agreement with the principal, since this determines the scope of the agent's undertaking. 2 Restatement (Second), Agency § 376, Comment a (1958). See also Rianda v. San Benito Title Guarantee Co., 35 Cal.2d 170, 217 P.2d 25 (1950); Seavey, Agency § 140 (1964); 3 Am.Jur.2d Agency §§ 17, 198.

Harper offered no allegation, in opposition to the motion for summary judgment, to the effect that the Agent agreed to inspect Harper's inventory for purposes of valuation, or to ensure that Harper's statements of inventory were based upon complete and accurate assessments. More-

over, the record indisputedly shows that the parties had no such conception of the Agent's duties. In every instance Harper alone evaluated the inventory and Harper's figures were accepted by the Agent as a matter of course. Harper adjusted the inventory statements to reflect minor fluctuations in the value of stock and equipment, while the Agent neither questioned those adjustments nor assumed to modify Harper's inventory valuations in any respect. Due solicitude for Harper's interests manifestly appears, inasmuch as the Agent repeatedly advised Harper as to the importance of accurate valuations and timely reporting.

■ Appellant's contention that the Agent undertook the responsibility of valuing Harper's inventory, by the mere fact of the Agent's transferring Harper's statements of value to the reporting forms, is equally without merit. Indeed, Harper in his affidavit conceded that, during the operation of the provisional reporting policy, he exclusively, and not the Agent, inspected the stock and equipment for the purpose of valuation.

Wallace v. Hartford Fire Ins. Co., 31 Idaho 481, 174 P. 1009 (1918), cited by appellant, is not in point, for in that case the agent's undertaking to obtain an insurance policy, and the complainant's reliance upon the agent's promise, were established. Similarly, in Anderson Feed & Produce Company v. Moore, supra, it was held that the claimant stated a prima facie case against the insurance agent by alleging that the agent expressly promised the claimant to report all stable items in claimant's inventory; that the claimant relied upon the agent's promise, and that the agent's failure to report the stable items resulted in reduced coverage of claimant's property at the time of loss.

■■ Harper finally contends that the cause submitted on the motions for summary judgment presented a genuine issue as to whether the Agent's officer, Ervin Hill, made misrepresentations as to Harper's coverage which Harper subsequently relied upon to its detriment. Respondents submitted in support of their motions for summary judgments, the deposition of Hill wherein he stated that he advised Harper to submit lump sum valuations of stock and equipment in its monthly statements, since detailed itemizations of inventory were unnecessary on the monthly reporting forms. Harper's affidavit opposing the motion fails to controvert Hill's deposition. The affidavit recites: "In the mid-1950s, the affiant is not definitely sure of the exact date * * * E. S. Harper Company and its officials were instructed by Ervin S. Hill that they * * * need not report each individual item of personal property." We think this dubious rejoinder to the respondents' showing failed to establish any *genuine* issue as to a material fact. While the party opposing the motion is entitled to the benefit of all reasonable doubts as to whether a genuine issue exists, in this case Harper failed specifically to deny the material allegations in Hill's deposition. Rule 56(e), I.R.C.P., requires:

"* * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials of his pleading, but must answer in detail as specific as that of the moving papers, setting forth the material facts as he believes and intends to prove them to be. If he does not so answer under oath, summary judgment shall be entered against him."

See Minidoka County, etc. v. Krieger, 88 Idaho 395, 399 P.2d 962 (1965); Clontz v. Fortner, 88 Idaho 355, 399 P.2d 949 (1965); and Boesiger v. DeModena, 88 Idaho 337, 399 P.2d 635 (1965). Moreover, assuming that Hill advised Harper to avoid detailed inventories of stock and equipment, nevertheless no reasonable inference can be drawn that Harper was in fact misled and thereby induced to omit the values of personal property altogether from his statements, contrary to the clear directives of the insurance policy, provided, of course, that he desired the additional coverage.

Harper's affidavit alleged also that Hill misinformed Harper by stating that the provisional reporting policy protected against catastrophe loss. That statement allegedly made refers merely to the risks covered by the policy. Harper could not reasonably have been misled thereby and induced consistently to undervalue stock and equipment for the extended period prior to the loss.

The judgment is affirmed. Costs to respondents.

TAYLOR, C. J., and McFADDEN and SPEAR, JJ., concur.

McQUADE, Justice.

I dissent.

Before an Idaho district court may enter a summary judgment, it must appear from

"the pleadings, depositions, and admissions on file, together with the affidavits, * * * that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Idaho R.Civ.P., 56(c).

See Christiansen v. Rumsey, June 23, 1967, 91 Idaho 684, 429 P.2d 416.

When ruling on a motion for summary judgment, the court acts strictly as an issue-finder, for it "is authorized to determine whether there is an issue to be tried, but not to try the issue", Deshazer v. Tompkins, 89 Idaho 347, 353, 404 P.2d 604, 607 (1965); see Sutton v. Brown, 85 Idaho 104, 375 P.2d 990 (1962), and, of course, the court may not "resolve factual issues or weigh the evidence." Steele v. Nagel, 89 Idaho 522, 527, 406 P.2d 805, 808 (1965). In determining whether the record presents an issue of material fact, "All doubts and all favorable inferences which may be reasonably drawn from the evidence will be resolved against the party moving for summary judgment", Otts v. Brough, 90 Idaho 124, 131, 409 P.2d 95, 98 (1965), and so a "motion for summary judgment must be denied if the evidence is such that conflicting inferences can be drawn therefrom and if reasonable men might reach different conclusions." Ibid. See Lundy v. Hazen, 90 Idaho 323, 411 P.2d 768 (1966); Deshazer v. Tompkins, supra.

In applying these rules, the trial court must accept as true fact allegations contained in an opposing party's affidavit, Christiansen v. Rumsey, supra, and if "conflicts and inconsistencies" appear therein, the court "should consider only the portions most favorable to such [opposing] party." Otts v. Brough, supra, 90 Idaho at 131, 409 P.2d at 98 (note, however, that the *Otts* opinion was specifically concerned with an opposing party's depositions rather than his affidavits).

This Court is mindful that "summary judgment 'should be invoked with caution to the end that litigants may be afforded a trial where there exists between them a bona fide dispute of material facts'", Steele v. Nagel, supra, 89 Idaho at 528, 406 P.2d at 808, (quoting from Alaniz v. United States, 257 F.2d 108, 110, (10th Cir.1958), and "on appeal [from a motion granting summary judgment against him] this court views the evidence in that light most favorable to the appellant and resolves all doubts in his favor." Metz v. Haskell, 91 Idaho 160, 417 P.2d 898, 899 (1966).

The record in the present action contains an affidavit by Howard H. Harper, an officer of appellant, opposing the motion for summary judgment. The allegations in this affidavit may be summarized as follows. Throughout the approximate fifteen-year period during which Ervin S. Hill, an agent of respondent Tandy & Wood, Inc., counseled and managed appellant's insurance coverage, appellant "fully and completely relied upon Ervin S. Hill to provide the maximum coverage at all times, for all of the [appellant's] equipment and items," and "[i]t was the intent" of appellant and respondent Tandy & Wood, Inc., "that every item of insurable interest"

belonging to appellant "be insured to avoid any loss."

When appellant first purchased the provisional reporting form policy of present concern, "[i]t was [appellant's] intent * * * to follow the advice of Ervin S. Hill to the letter as it [appellant] had in the past * * * and would continue" afterwards. Upon appellant's purchase of this policy, Hill "advised" appellant "as to what [valuation] figures it [respondent Tandy & Wood, Inc.,] would require [to fill out the monthly report form on appellant's behalf]. These figures were supplied as requested by Mr. Hill," and neither Hill nor any other agent of respondent Tandy & Wood, Inc., "[ever]. requested [or] required any additional information." None of appellant's officers "ever saw the official [provisional report] form ·or had [it] * * * explained to them." As noted in the majority opinion, from the beginning Hill filled out the report form, and appellant, which "placed all * * * [its] insurance in the hands of Ervin S. Hill," "explicitly trusted Mr. Hill to make the correct entries and to secure the correct information for those entries."

Near the end of its opinion, the majority notes Hill's deposition, introduced in support of tthe motion for summary judgment, in which he stated that he advised Harper "to submit lump sum valuations of stock and equipment * * *, since detailed itemizations of inventory were unnecessary". The majority then compares this allegation with an allegation contained in Howard H. Harper's opposing affidavit, and decides that Harper's allegation is "dubious rejoinder" and "failed to establish any *genuine* issue as to a material fact." (Italics in original.) For purposes of its comparison, the majority has drawn Harper's statement out of its context in such a way, I think, as to alter the full allegation's meaning. Harper's full paragraph follows:

"V.

"In the mid-1950's, the Affiant is not definitely sure of the exact date, a conference on insurance was held between Ervin S Hill as an agent, employee and officer of Tandy & Wood, Inc E S Harper and Howard H Harper as employees and officers of E S Harper Co Inc. One of the results of said conference was to eliminate the necessity by E S Harper Co Inc of reporting provisionally on the provisional reporting policies, each and every single item of personal property. E S Harper Co Inc and its officials were instructed by Ervin S Hill that they were covered for a catastrophe loss and need not report each individual item of personal property."

That Hill conferred with Howard H. Harper about this change, and that Hill allegedly instructed Harper that appellant was "covered for a catastrophe loss," round out Harper's allegation as quoted by the majority, and raise a doubt concerning what items of value Hill insisted be supplied by appellant, and how much responsibility Hill assumed for assuring an accurate valuation be reported.

Howard H. Harper insisted in his affidavit that appellant accurately reported whatever figures were requested by Hill, who undertook to provide complete insurance coverage for appellant's inventory and equipment and used the provisional reporting form policy as part of appellant's insurance program. Harper also stressed that appellant placed full reliance in Hill and that from the beginning, Hill himself filled out the report form each month. It should be noted that Hill's conduct was seriously inconsistent with the procedure of the insurer, respondent General Insurance Company of America, and this inconsistency itself might raise an inference that Hill had assumed much more responsibility for the accuracy of appellant's valuations than would an insurance agent in the ordi-

nary situation where the insured filled out the report form. Respondent General Insurance Company of America never objected to these forms, and so might be deemed to have sanctioned the conduct of Hill, who was acting as General's agent.

From the foregoing, I concluded that respondents have not met their burden of proving "that there is no genuine issue as to any material fact". Idaho R.Civ.P., 56(c), regarding each of the respondents' liability to appellant. See Christiansen v. Rumsey, supra. To decide otherwise on this record necessitates weighing evidence and resolving conflicting inferences, a function which of course is not properly within the power of either the district court or of this Court.