COLLEGIATE MANUFACTURING COM-PANY, Appellant,

v.

McDOWELL'S AGENCY, INC., and Alfred L. Stoll, Appellees.

No. 55102.

Supreme Court of Iowa.

Sept. 19, 1972.

Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, for appellant.

Jones, Hoffman & Davison, Des Moines, for appellees.

LeGRAND, Justice.

This is a suit by which plaintiff seeks to recover $114,000 from defendants for their alleged failure to provide adequate fire insurance to cover loss to plaintiff's building and contents. Trial to a jury resulted in a defendant's verdict, and plaintiff appeals on the sole ground there was error in the instructions submitting the case to the jury. We affirm the trial court.

No claim is made against Travelers Insurance Company, which issued the policy in question. Plaintiff asks recovery only against the agency which secured the insurance from Travelers and against Alfred L. Stoll, its controlling stockholder and managing officer. For convenience we refer to Mr. Stoll as though he were the sole defendant.

Plaintiff is a manufacturing company located in Ames, Iowa, engaged principally in processing high school and college specialty items—sportswear, T-shirts, gym shorts, sweat shirts, jackets, pennants and banners. The company is a wholly owned subsidiary of Littlefield, Adams & Company of Patterson, New Jersey. For many years defendant (and his predecessors) had handled most of plaintiff's insurance problems. There is evidence that plaintiff relied heavily on defendant Alfred L. Stoll's "expertise to handle all the insurance affairs of the company and placed complete confidence" in him.

On various occasions Mr. Stoll contacted plaintiff with suggestions for additional or expanded coverage. These suggestions were usually followed. In 1963 defendant advised plaintiff to protect itself against fire loss by an inventory reporting policy, which shortly thereafter he placed for plaintiff with Travelers Insurance Company.

This type of policy is widely used to provide coverage for those who have fluctuating inventories. It affords coverage as needed and avoids payment of premiums based on values not representative of the property on hand. Such coverage is often said to be favorable to the insured. The policies are variously described as "provisional reporting," "fluctuating inventory," "monthly reporting," "value reporting," and "reporting form" insurance. All mean substantially the same. E. S. Harper Co. v. General Insurance Co. of America (1967), 91 Idaho 767, 430 P.2d 658, 659; Anderson Feed & Produce Company v. Moore (1965), 66 Wash.2d 237, 401 P.2d 964, 965; Ben-Hur Manufacturing Company v. Firemen's Insurance Company of New Jersey (1962), 18 Wis.2d 259, 118 N.W.2d 159, 164; Commonwealth Insurance Co. of New York v. O'Henry Tent & Awning, 7 Cir., 1961, 287 F.2d 316, 319; Albert v. Home Fire & Marine Insurance Co. of California (1957), 275 Wis. 280, 81 N.W.2d 549, 554; Annotation, 13 A.L.R.2d 713–727.

Even though the values reported fluctuate from month to month, such policies customarily state a maximum limit of liability. In this case plaintiff's loss was $394,000. It received payment of $280,000, which is claimed to be the maximum due under the policy. Plaintiff now demands $114,000—the excess of the loss over the payment—from defendant because of his alleged negligent failure to provide adequate coverage.

The case was brought and tried by plaintiff on the theory defendant was negligent in discharging his obligation as plaintiff's agent. It is charged the loss was proximately caused by such negligence. Plaintiff asserts it relied on defendant for "the degree of skill and knowledge and expertise requisite to the position of insurance agent and broker and to procure and provide insurance that best suits its requirements" and that defendant was "negligent in exercising that degree of good faith, reasonable skill, care, diligence and expertise required of said agents or brokers."

Defendant denies any negligence and alleges as a defense plaintiff's contributory negligence in failing to advise itself of the protection afforded under the policy. Defendant also asserts the additional insurance which plaintiff now says was to have been provided was not available from Travelers Insurance Company or any other company plaintiff represented and alleges plaintiff was so advised. Defendant further insists he was an agent for Travelers Insurance Company and not for the plaintiff.

A jury trial resulted in a verdict for defendant. Plaintiff appeals on the single issue its theory of the case—that it had placed its insurance program entirely with defendant and relied completely on his "expertise" to handle it properly—was not presented to the jury.

This involves two instructions—one which plaintiff alleges was given incorrectly and one which was requested and refused. We discuss them together.

Plaintiff objects to Instruction 9 which was submitted as follows:

"You are instructed that there is a duty upon the owner of insurable property to familiarize himself with the quantity and value of such property, its insurability, the kinds and amounts of insurance available, and in general the terms and conditions of the insurances issued upon his property.

"As applied to this case, it was the duty of the plaintiff to advise Stoll, generally, as to the quantity and value of the property to be insured and the kinds and amounts of insurance desired, and then it was the duty of Stoll to use due diligence to procure the insurance and at all times to keep the plaintiff advised and informed as to the insurances available and procured.

"The failure of either party to perform the duties herein stated would not be chargeable to the neglect of the other party."

Objection to this instruction was made on the following grounds:

(1) That it fails to advise the jury that an insured may rely upon an agent to properly perform the responsibilities he has undertaken;

(2) That an agent who holds himself out as a skilled insurance adviser upon whom a customer may rely for advice concerning his insurance needs owes the customer a duty to properly advise him concerning such needs;

(3) It fails to advise the jury that a failure to read an insurance policy does not constitute contributory negligence but that one may rely upon the agent to properly perform his responsibility;

(4) That it improperly advises the jury that plaintiff had a duty to familiarize itself with the quantity and value of its property and the general type and extent of insurance coverage afforded by the policy when, in fact, plaintiff was justified in

delegating this duty to defendant as its agent.

The requested instruction raises substantially the same issue and asked for a specific instruction that under circumstances alleged to exist here plaintiff "was not obligated to examine and read the policy to ascertain the coverage provided."

■ Before discussing the merits of the issue raised, we dispose of defendant's insistence plaintiff has no claim against him because he was Traveler's agent, not plaintiff's. Under the circumstances here we hold defendant was acting as plaintiff's agent and was obligated to perform his duties toward plaintiff with reasonable care and diligence. Wolfswinkel v. Gesink, 180 N.W.2d 452, 456 (Iowa 1970) and citations; 43 Am.Jur.2d, Insurance, section 175; Cf. American Eagle Fire Insurance Co. v. Burdine, 10 Cir., 1952, 200 F.2d 26, 30, and Swift v. White, 256 Iowa 1013, 1020, 129 N.W.2d 748, 752 (1964).

■ This brings us to the nature and extent of defendant's duty to plaintiff. Generally an agent owes his principal the use of such skill as is required to accomplish the object of his employment. If he fails to exercise reasonable care, diligence, and judgment in this task, he is liable to his principal for any loss or damage occasioned thereby. 3 Am.Jur.2d, Agency, section 202, page 583; 3 C.J.S. Agency § 162, page 46; Restatement (Second) of Agency, section 401 (1957); Dombeck v. Chicago, Milwaukee, St. Paul & Pacific R. R. Co. (1964), 24 Wis.2d 420, 129 N.W.2d 185, 194; Wolfswinkel v. Gesink, supra, and citations.

This general rule may be altered, either to limit or enlarge the ordinary duties, by agreement of the parties. 3 C.J.S. Agency § 155 a, b, pages 34, 35; 3 Am.Jur.2d, Agency, section 198, pages 579, 580.

■ A review of the record discloses no evidence to sustain plaintiff's position there was any agreement or arrangement

which would enlarge defendant's duty beyond the general duty an agent owes his principal. It is true plaintiff relied on defendant, had great confidence in him, and frequently followed his advice on insurance matters; but this is usually the case. There is no evidence of any agreement, express or implied, that defendant was to assume responsibility far beyond that which would normally attach to his conduct as plaintiff's agent. The principal-agent relationship cannot be so drastically expanded unilaterally. Fowler v. Berry Seed Co., 248 Iowa 1158, 1166, 84 N.W.2d 412, 416 (1957); E. S. Harper Co. v. General Insurance Co. of America, supra, 91 Idaho 767, 430 P.2d at 662.

We hold the defendant owed plaintiff that duty which an agent ordinarily owes his principal—the duty to use reasonable care, diligence, and judgment. With that in mind, we move to the sole issue before us: Do the instructions adequately and properly present plaintiff's theory of the case to the jury? We believe they do.

The general principles by which we must test the instructions are well settled.

Instructions must be read together and not considered piecemeal. Berhow v. Kroack, 195 N.W.2d 379, 385 (Iowa 1972); Robeson v. Dilts, 170 N.W.2d 408, 414 (Iowa 1969).

The instructions must submit only those pleaded issues which have support in the record. Wroblewski v. Linn-Jones F.S. Services, Inc., 195 N.W.2d 709, 711 (Iowa 1972); Bradt v. Grell Construction, Inc., 161 N.W.2d 336, 340 (Iowa 1968); Walker v. Sedrel, 260 Iowa 625, 632, 149 N.W.2d 874, 878 (1967); Flentie v. American Community Stores Corporation, 8 Cir., 1968, 389 F.2d 80, 82.

The sufficiency of the evidence to warrant submission of a pleaded issue to the jury is decided by giving the evidence the most favorable construction it will reasonably bear in favor of the party urging submission. Wroblewski v. Linn-Jones F.S.

Services, Inc. and Bradt v. Grell Construction, Inc., both supra.

Using these principles as our guide, we hold the instructions present no reversible error. Instruction 9 must be considered in the light of what was said in Instructions 7 and 8. We set out the pertinent parts of each:

### Instruction 7

"You are instructed that where the owner of property expressly or impliedly authorizes an agent to procure additional insurance thereon, and the agent agrees to do so and is free to do so, the effect of such an arrangement is to obligate the agent to use reasonable diligence to procure the additional insurance and to seasonably notify the owner of the property in the event of the failure of such attempt to procure additional insurance. In this case, if you believe from the preponderance of the evidence that defendant Stoll did agree to procure additional insurance, as claimed by plaintiff Collegiate Manufacturing Company, and he failed to do so from want of reasonable diligence, or having used reasonable diligence and failing to procure additional insurance he failed to notify the plaintiff of the fact that he was unable to obtain additional insurance, then your verdict will be for the plaintiff."

### Instruction 8

"You are further instructed that where an insurance agent agrees to procure additional insurance, over and above that which was originally issued, and is free to do so, the effect of such an arrangement is to obligate the agent to use reasonable diligence to procure the additional insurance and to keep the property owner advised as to his efforts, and to notify the property owner of his failure to procure such additional insurance. In this case, if you believe from the preponderance of the evidence that defendant Stoll did agree to procure additional

insurance, as claimed by the plaintiff, and that he used reasonable diligence and having used reasonable diligence was unable to procure the additional insurance, for reasons beyond his control, and the plaintiff was seasonably notified by the agent he was unable to procure the additional insurance, defendant Stoll would not be negligent and your verdict will be for the defendants."

■ Following these instructions, Instruction 9 placed upon plaintiff the duty to know the quantity and value of its property and in general the terms and conditions of the insurance covering it. While we do not approve the wording of this instruction, any possible prejudice was removed by the portion which specifically limited plaintiff's duty *as applied to this case* to knowing the quantity and value of the property to be insured and advising defendant what kind of insurance was wanted and how much.

■ This was not error. We agree there *could* have been delegated to defendant the burden of deciding for plaintiff both the type and amount of insurance to be provided; but there is no evidence to sustain such a contention. It would have been improper to so instruct the jury.

As we have frequently said, most recently in Rosenau v. City of Estherville, 199 N.W.2d 125, filed June 29, 1972, the ultimate test is whether an instruction is likely to confuse or mislead the jury. We are convinced this one was not.

It is argued the instructions demanded plaintiff must *read* the policy or be guilty of contributory negligence as a matter of law. We do not so interpret them. They do nothing more than require plaintiff to know what insurance he wants and to instruct defendant to obtain it. From that time on, the instructions place all responsibility on defendant. Taken as a whole, they were at least as favorable—perhaps more so—than plaintiff was entitled to.

What we have said also disposes of plaintiff's complaint that its requested instruction 5 was refused.

Having found no reversible error, we affirm the judgment of the trial court.

Affirmed.

All Justices. concur except Mc-CORMICK, UHLENHOPP and REYN-OLDSON, JJ., who dissent.

McCORMICK, Justice (dissenting).

The majority apparently agrees with plaintiff that if an agent negligently fails in an undertaken duty to insure he cannot be excused by the insured's failure to familiarize himself with the actual terms and conditions of the policy obtained. However, the majority not only forgives trial court for having wrongly told the jury the opposite, but refuses to find error in trial court's denial of plaintiff's requested instruction embodying the correct rule. I respectfully dissent.

This appeal presents a much narrower question than whether plaintiff's theory of the case was submitted. Plaintiff simply claims trial court erred in instructing that defendant's undisputed duty to use reasonable care, diligence and judgment was qualified by a requirement plaintiff know the terms and conditions of policies on its property. The correct rule, crucial to the case but not stated by the majority, is that an insurance agent cannot be relieved from breach of duty to procure insurance with terms and conditions specified by his principal by the principal's failure to read and understand the policy obtained. This is because the principal "is entitled to rely upon the agent having performed his duty." Hampton Roads Carriers v. Boston Insurance Company, 150 F.Supp. 338, 343 (D. Md.1957). See also Ursini v. Goldman, 118 Conn. 554, 173 A. 789 (1934); Progress Laundry Company v. Schweik, 332 Ill.App. 408, 75 N.E.2d 390 (1947); Harris

v. A. P. Nichols Investment Company, 25 S.W.2d 484 (Mo.App.1930); Barton v. Marlow, 47 N.J.Super. 225, 135 A.2d 670 (1957); Israelson v. Williams, 166 App. Div. 25, 151 N.Y.S. 679 (1915), appeal dismissed, 215 N.Y. 684, 109 N.E. 1079; Elam v. Smithdeal Realty & Ins. Co., 182 N.C. 599, 109 S.E. 632 (1921); Franklin v. Western Pacific Insurance Company, 243 Or. 448, 414 P.2d 343 (1966); 43 Am.Jur. 2d Insurance § 176 at 233–234; annot. 29 A.L.R.2d 171 at 196.

As the majority opinion recognizes, plaintiff's petition claimed defendant breached his duty as plaintiff's insurance agent to secure adequate insurance coverage and thereby caused the loss for which recovery is sought. An insurance agent owes his principal a duty of reasonable care, diligence and judgment, and the majority rightly decides, contrary to defendant's contention, that defendant was plaintiff's agent. The majority also acknowledges, at least implicitly, there was a jury question as to whether plaintiff actually delegated responsibility to defendant to secure sufficient insurance coverage to include the loss involved. Instructions 7 and 8 outline defendant's duty in the event the jury finds there was such delegation; no one complains about them. However, the defense took at least three paths in response to plaintiff's claim, alleging: (1) there was no request to obtain greater coverage than was obtained; (2) defendant kept plaintiff advised that its coverage was inadequate on the inventory that burned; and (3) his duty in either respect could not be found breached since plaintiff had the policy and it showed the actual coverage. This appeal only concerns the issue raised by the third argument, which is somewhat like a defense of confession and avoidance. Plaintiff countered this third approach by saying it did not know the actual coverage afforded by the policy because it relied upon defendant doing what he was asked rather than upon study of the policy.

It therefore became important to plaintiff to have the jury told plaintiff could rely upon its agent, and the agent's duty was not lessened or altered by plaintiff's failure to familiarize itself with the policy. This concept is inherent in the fiduciary relationship involved. Instruction 9 purports to amplify defendant's duty but errs in saying an owner of insurable property has a duty "not chargeable to [his agent's] neglect" to familiarize himself in general with "the terms and conditions of the insurances issued upon his property." The majority seems to acknowledge this error but finds it is not "reversible" for two main reasons. The first is because Instructions 7 and 8 are not wrong, and the second is because "any possible prejudice was removed by the portion [of Instruction 9] which specifically limited plaintiff's duty *as applied to this case* to knowing the quantity and value of the property to be insured and advising defendant what kind of insurance was wanted and how much." This reasoning begs and does not answer the question whether plaintiff had a right in view of the evidence and issues to have the jury affirmatively given the correct rule on the issue of reliance.

The record reveals great controversy on this issue. Indeed, it is much of what the lawsuit was about. Defendant knew in 1963 that plaintiff's business was growing steadily and that plaintiff wanted adequate insurance protection of its growing inventory. Defendant learned of the inland fire and marine policy and recommended it to plaintiff as appropriate for its needs. The policy was sold on the basis it would solve an existing coverage problem, including the site of the loss here, and would base premiums upon monthly reports of inventory value. Coverage was to fluctuate with inventory. Defendant testified the supposed advantage to the insured is he thereby pays only for the coverage he gets. What plaintiff claims defendant failed to disclose was that coverage was limited by the policy to $280,000 at the location involved here, even though premiums were to be paid as if inventory was fully protected. Plaintiff had its inventory in eight build-

ings in several different locations. Coverage was separately limited on each building. Two buildings were at the site of the fire, a hollow block building with inventory coverage to $80,000 and a wood frame building with coverage to $200,000 ($120,000 prior to increase by enforcement in May 1966). The fire destroyed the entire inventory in these buildings and it is the uninsured portion of that loss for which recovery is sought here.

Defendant acknowledged the peculiarity of requiring premium payment as if the inventory was insured to full value:

"* * * I agree that there's a certain amount of injustice in there, because it does create an adverse penalty on that insured who happens to have more goods than he has limits, but he still has to pay premiums on the whole amount."

Is it surprising that plaintiff claims it believed it was fully covered? Plaintiff's position gains credence from the fact its inventory value at the site involved frequently exceeded $280,000. Every month from 1965 until the June 9, 1968, fire, plaintiff reported and paid premiums based upon substantially higher inventory values. These reports included figures ranging from $321,000 to $496,000 and on the date of the fire $395,000. Plaintiff's president testified he thought the policy figures limiting liability only represented the basis upon which a deposit premium was computed and actual values insured were determined from the monthly reports with an annual invoice for premium deficit. The premiums were in fact paid upon substantially that basis. After the loss defendant must have had some feeling plaintiff's belief as to coverage was genuine because he said:

"I had entertained the thought at one time I might try to make a case for the benefit of Collegiate that their acceptance of the premium beyond that would give them coverage beyond that,' in an effort to try to reimburse them for the amount paid. I just presented it to Travelers as a way of looking at this thing, and they wouldn't agree to it."

The record is also replete with examples of defendant's insurance services over the years, lending support to plaintiff's claim his agency was like a department of the company. Although disputed, there is substantial evidence plaintiff relied upon defendant to provide it with a policy which would assure its inventory was fully protected against fire loss. There is also evidence plaintiff did not know and understand the coverage limitations of the policy.

Thus, not only was the principle of law upon which plaintiff requested the jury be instructed correct, but also there was substantial evidence in the record to support an instruction on it. In such circumstances a correct instruction on the issue was required. We have said, "* * * [I]nstructions should fairly and completely present the jury with those issues they are to decide. [They] are the jury's only source of guidance for the correct application of the law to the facts." Lovely v. Ewing, 183 N.W.2d 682, 684 (Iowa 1971), and citations. The jury needed and was entitled to know the law on the issue of reliance. Plaintiff's right to an accurate instruction on the principle is especially clear because its requested Instruction 5 embodied the applicable rule. Even if the requested instruction was not framed so trial court could give it literally, it alerted the court to a pertinent legal principle not otherwise covered by the instructions and on that basis alone should have been appropriately communicated to the jury. See Henneman v. McCalla, 260 Iowa 60, 69, 148 N.W.2d 447, 452 (1967), and citations. The requested instruction called trial court's attention to the issue so that the misstatement of law in Instruction 9 cannot be viewed as inadvertent.

Apart from this, the reasoning of the majority in holding trial court's error somehow neutralized by Instructions 7, 8 and the remainder of Instruction 9 is mistaken. Instructions 7 and 8 do not even

reach the issue of reliance and could hardly purge the record of error on a subject they do not discuss. Even if they did include the correct rule they could not cure the error. "Giving an incorrect instruction is not obviated by giving a correct one on the same issue since it is impossible to tell whether the jury followed the correct guide or the incorrect one." Wheatley v. Heideman, 251 Iowa 695, 713, 102 N.W.2d 343, 354 (1960).

As a matter of fact, Instructions 7 and 8 shed no light on the issue of reliance. That is why Instruction 9 was necessary. As to it the majority takes an untenable position when it first concedes disagreement with trial court's positive statement that an owner has a duty to know the terms of his insurance policies and then finds it nonprejudicial because omitted from the immediately subsequent recital of *what plaintiff was to advise Stoll* in applying the rule to this case. There is no problem reconciling what is first and later said in the instruction. The first statement is a general statement of plaintiff's purported duty as owner of insurable property. The second simply tells the jury what plaintiff must advise its agent. There is no inconsistency and the second statement does not in any way limit, modify, or change the first. In fact it is built upon the first and entirely consistent with it. It would not serve any purpose to repeat plaintiff's alleged duty to familiarize itself with terms and conditions of insurance policies issued on its property in a paragraph of the instruction telling what plaintiff must advise its agent before it is obtained. The interpretation placed on the instruction by the majority is strained, hypertechnical and unjustified. Moreover, "The real test of the meaning and effect of an instruction for the purpose of review * * * is, the idea which the language *objected to is fairly calculated to convey to* the minds of jurors drawn from the ordinary walks of life * * *." Law v. Bryant Asphaltic Paving Co., 175 Iowa 747, 753, 157 N.W. 175, 178 (1916); see also Leaders v. Dreher, 169 N.W.2d 570, 575 (Iowa 1969). This principle is as applicable when an instruction is defended as when it is attacked. The meaning imputed to Instruction 9 by the majority flunks the test. Its reasoning belies the plain meaning of what trial court said on perhaps the most significant issue in the case. I believe lay jurors from ordinary walks of life would take the court's statement to mean plaintiff could not recover if it did not know the coverage limitations of its policy before the fire and am confident that is what defense counsel argued. The briefs show that is how counsel on both sides understood it.

I would reverse and remand for new trial.

UHLENHOPP and REYNOLDSON, JJ., join in this dissent.